**STATE OF IDAHO, DEPARTMENT OF FINANCE, Plaintiff,**

v.

**SECURITY PACIFIC BANK IDAHO, N.A., Defendant.**

**Civ. No. 91–0499–N–HLR.**

United States District Court, D. Idaho.

July 31, 1992.

Larry Echohawk, Atty. Gen. State of Idaho and Fred C. Goodenough, Deputy Atty. Gen., Dept. of Finance State of Idaho, Boise, Idaho, for plaintiff.

R. Wayne Sweney, Lukins & Annis, P.S., Coeur d'Alene, Idaho, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RYAN, District Judge.

Currently before the court is defendant's Motion for Summary Judgment, filed on May 14, 1992, and plaintiff's cross-Motion for Summary Judgment, filed on May 15, 1992. The motions have been fully briefed, and the court heard oral argument on July 22, 1992. Accordingly, the motions are ripe for review.

## I. FACTS AND PROCEDURE

First Federal Savings and Loan Association of Coeur d'Alene was a federally chartered savings and loan association with ten branches in Idaho. In 1989, it changed its name to Mountain West Savings Bank as a result of a merger with that bank. In August 1990, Mountain West Savings Bank changed its name to Security Pacific Savings Bank Idaho, (hereinafter SPSBI), after being acquired by Security Pacific Bancorporation Northwest, Seattle, Washington, a

subsidiary of Security Pacific Corporation. During this time as a savings and loan association and a savings bank, SPSBI was permitted by Idaho Code § 26–1855 to conduct full service banking business on Saturdays and did so at certain of its branches. In August 1991, SPSBI converted to a national bank. Upon conversion to a national bank, SPSBI changed its name to Security Pacific Bank Idaho, National Association, (hereinafter SPBI). In April 1992, Security Pacific Bank Idaho, N.A., merged with Bank of America Idaho and became Bank of America Idaho, N.A., a national association.

Upon conversion, SPBI sought to keep its branches open on Saturday. Idaho Code § 26–716 [1] prohibits banks from being open and conducting business on Saturdays or legal holidays. This section is made applicable to national banks by Idaho Code § 26–107.[2] Idaho Code § 26–309 does allow banks to operate a "customer-bank communication terminal," on Saturdays. Idaho Code § 26–309 (1990). These devices are also known as Automated Teller Machines or ATM's. Idaho Code § 26–309 [3] also allows banks to operate drive-up windows on Saturdays. This section is also made applicable to national banks by Idaho Code § 26–107. As stated earlier, however, Idaho Code § 26–1855 [4] does allow both federal and state savings and loan associations and savings banks to conduct full service operations on Saturdays.

In 1991, SPBI requested the opinion of the United States Office of the Comptroller of the Currency, (hereinafter OCC), regarding the applicability of the Idaho Saturday closing laws to national banks. The OCC, in a letter dated October 29, 1991, determined that, upon SPBI's conversion to a national bank, it could continue to perform full service banking on Saturdays. *See* Mem.Supp.Summ.J., filed May 14, 1992, Ex. A. The OCC stated that the Idaho statute conflicted with the powers given to the national banks set forth in statutes enacted by Congress and was, therefore, preempted under the Supremacy Clause of Article VI of the United States Constitution.

Shortly thereafter, the State of Idaho, (hereinafter the State) filed suit in Idaho state court for a declaratory judgment and also to enjoin SPBI, the defendant, from offering full service banking on Saturdays. In response, SPBI filed a counter-claim seeking a declaration that the State's law regulating the bank's ability to open on Saturday is preempted by federal law. In November 1991, SPBI removed this case to federal court.

As stated above, the State requires all national banks to close on Saturdays. However, the State does allow limited functions to be performed by the bank through ATM's or drive-up windows. SPBI is now offering full service banking on Saturdays at two of its branches contrary to these state statutes. The overriding issue in this case is whether the Idaho statutes, set forth above, are preempted by federal law.

## II. ANALYSIS

### A. *Deference Given to OCC's Determination*

As stated, SPBI requested a ruling by the OCC on whether it could continue to operate on Saturdays. The OCC determined, in a letter dated October 29, 1991,

---

1. Idaho Code § 26–716 (1990) provides in part, "[n]o bank in this state shall keep open for transaction of banking business, or perform any of the acts or transaction of a commercial bank on any Saturday...."

2. Idaho Code § 26–107 (1990) provides in part, "[t]he provisions of sections 26–215, 26–301 through and including, 26–309, 26–716 ... Idaho Code, also apply to national banks."

3. Idaho Code § 26–309 (1990) provides in part: A person may perform as would a device so long as the person does not perform any func-

tions not specifically authorized by this section.

....

(4) The provisions of section 26–716, Idaho Code, which prohibit a bank from transacting business on Saturdays and legal holidays shall not apply to customer-bank communication terminals operated under the provisions of this section.

4. Idaho Code § 26–1855 (1990) provides in part, "[n]o savings and loan association in this state shall remain open for transaction of business on any legal holiday defined in section 73–108."

that the State's law was preempted by federal law. The United States, Office of Comptroller of the Currency, appearing as amicus curiae, and filing an amicus brief in this case[5], and SPBI both cite *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987), in their respective briefs for the proposition that the opinion of the OCC should be given great deference, since it is a reasonable construction given to the federal statutes in question.

In *Clarke*, the Supreme Court stated: It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the meaning of these laws

*Id.* at 403–04, 107 S.Ct. at 759 (citations omitted). In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court set forth the test that a court must apply where such an agency has interpreted its regulatory statute.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue.... If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted). The Court went on to state: "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction...." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11.

In its opinion, the OCC determined that the federal banking laws preempted the State's law. Congress has not spoken directly to the issue of whether a bank must comply with a state's Saturday closing laws. However, as will be discussed below, the OCC's interpretation of the federal banking laws that it argues preempts the State's law is a reasonable construction of those statutes, especially in light of the fact that this court's own analysis reaches the same conclusion as the OCC. Accordingly, the court finds that the OCC's construction given to the federal statutes in question should be given great deference by this court.

### B. *Preemption Generally*

SPBI argues that preemption can occur in one of three basic ways.

Pre-emption may be ... "compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." ... Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because ... "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject".... 

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility" ... or when the state law "stands as an

---

**5.** The court notes that the United States' arguments with respect to the preemption issue parallels SPBI's arguments on this same issue, except for the fact that the government has not asserted the preemption argument regarding 12 U.S.C. § 36. Accordingly, for purposes of this order, rather than being repetitious, the court will simply note that the government's position closely parallels that being asserted by SPBI.

obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (citations omitted).

The State argues that state law must *expressly* conflict with the federal law before it can be preempted.

National banks are instrumentalities of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt, by a State, to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority *expressly conflicts* with the laws of the United States, *and either* frustrates the purpose of the national legislation, *or* impairs the efficiency of these agencies of the Federal government to discharge the duties, for the performance of which they were created.

*Davis v. Elmira Savings Bank,* 161 U.S. 275, 283, 16 S.Ct. 502, 503, 40 L.Ed. 700 (1896) (emphasis added). The State argues that SPBI cannot point to any *express* conflict between federal and state law, and, therefore, preemption is not appropriate.

The court finds, however, that the State's reading of the *Davis* case is too narrow. In *Louisiana Public Service Comm'n v. F.C.C.,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), the Supreme Court reiterated the *Fidelity* preemption analysis. "The Supremacy Clause of [Article] VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs ... where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *Louisiana Pub. Serv. Comm'n v. F.C.C.,* at 368–69, 106 S.Ct. at 1898 (citations omitted).

■ The case at bar, requires an application of the third basis for preemption listed in *Fidelity.* It is clear that Congress has not completely preempted the entire banking field either expressly or impliedly, so any preemption must arise out of an actual conflict between federal and state law. Even though Congress may not have specifically addressed the issue in this case, federal law can still preempt the state law to the extent that the state law "stands. as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. at 153, 102 S.Ct. at 3022. In other words, if the State's banking laws stand as an obstacle to the operation of national banking laws, the federal laws will preempt the state laws. The court will address each of the federal statutes seriatim.

### C. Preemption by 12 U.S.C. § 24

■ SPBI argues that two subsections of 12 U.S.C. § 24 conflict with Idaho's Saturday closing laws, and therefore, the state law should be preempted. First, SPBI points out that Section 24(Seventh) sets out the powers given to national banks. SPBI argues that pursuant to Section 24, not only can banks exercise those express powers, but it can also,

exercise by its board of directors or duly authorized officers or agents, subject to law, *all such incidental powers as shall be necessary to carry on the business of banking;* by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes....

12 U.S.C.S. § 24(Seventh) (Law. Co-op. 1978) (emphasis added).

SPBI argues that the State's Saturday closing laws interfere with the banks' ability to perform some of the core banking functions expressly given to national banks by Congress in Section 24(Seventh). Specifically, defendant points out 11 functions with which the Saturday closing laws interfere, including: the ability to make loans, open new accounts, conduct some commercial transactions, and provide currency ex-

changes. *See* Mem.Supp. Def's Mot. Summ.J., filed May 27, 1992, at 14–15.

SPBI argues that the language in 12 U.S.C. § 24(Seventh) has been given a broad preemptive effect by the United States Supreme Court. SPBI notes in *Franklin National Bank v. New York,* 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954), the Supreme Court held that a state law prohibiting national banks from using the word "savings" in advertising conflicted with Section 24(Seventh) by restraining a bank's ability to avail itself of the incidental powers that are necessary to carry on banking.

In response, the State argues that state law is not preempted by 12 U.S.C. § 24(Seventh). The State contends that any interference with the bank's ability to carry on some of its prescribed powers is negligible. Plaintiff argues that by allowing banks to conduct business through ATM's and drive-up windows on Saturdays, the bank can conduct almost all of its essential functions.

12 U.S.C. § 24(Seventh) lists the express functions that banks are able to carry on, and allows them to exercise all incidental powers necessary to carry on the banking business. The court agrees with the OCC's determination that this section preempts the State's law which prohibits a national bank's operation on Saturday.

In *Franklin,* the Supreme Court stated: "The National Bank Act authorizes national banks to receive deposits without qualification or limitation, and it provides that they shall possess 'all such incidental powers as shall be necessary to carry on the business of banking....'" *Id.* at 376, 74 S.Ct. at 552–53.

In *Franklin,* the court was concerned with the use of the word "savings" in bank advertising. Like the instant case, there was no express language in the statute dealing with the issue; nonetheless, the court held that the prohibition against the word "savings" inhibited a bank's ability to perform some of its functions, namely, accept deposits, and was, therefore, preempted.

Similar to the *Franklin* case, the state law in the instant case conflicts with some of the express powers given to national banks, i.e. loaning money, exchanging currency, etc. National banks are allowed to engage in these functions and are given all incidental powers to effectuate these functions. The ability to establish its own hours and make loans are examples of those incidental powers necessary to carry on its business. A limitation on these powers clearly impedes its ability to function, and stands as an obstacle to the objectives of the National Bank Act. Therefore, the court finds that 12 U.S.C. § 24(Seventh) preempts Idaho Code § 26–716 to the extent it prohibits national banks from operating on Saturdays.

SPBI also asserts that the state law is preempted by 12 U.S.C. § 24(Sixth) which gives national banks the power "[t]o prescribe by its board of directors, by-laws not inconsistent with law, regulating the manner in which its stock shall be transferred, its directors elected or appointed, its officers appointed, its property transferred, *its general business conducted, and the privileges granted to it by law exercised and enjoyed.*" 12 U.S.C.S. § 24(Sixth) (Law. Co-op.1978) (emphasis added). SPBI argues that this section allows banks to change its banking hours only by amending its bylaws. The bank argues that these bylaws have to be consistent only with federal law and not state law. Thus, a state law purporting to regulate a national bank's hours would conflict with this section, and, therefore, be preempted.

In regards to 12 U.S.C. § 24(Sixth), the State insists that the bylaws of a bank must also comply with state law and not just federal law. The State argues that the defendant has cited no cases which expressly state that the bylaws must only comply with federal law. Furthermore, the State argues that Section 24(Sixth) states that the bylaws should not be inconsistent with the "law" and does not distinguish between federal or state law or both.

Having reviewed the record in this matter, the court finds SPBI's position well taken. It would appear that the State's

Saturday closing laws are also preempted by 12 U.S.C. § 24(Sixth). In *McKee & Co. v. First National Bank of San Diego*, 265 F.Supp. 1 (S.D.Cal.1967), the court cited *Rankin v. Tygard*, 198 F. 795 (8th Cir. 1912), for the proposition that "bylaws were the law of the bank so long as not inconsistent with the federal law...." *Id.* at 5. The OCC determined that a national bank's bylaws *may* comply with state law as a matter of comity, but they need only comply with federal law to be valid. The court agrees with this determination and finds that this is a reasonable construction of the statute and, therefore, will defer to the findings of the OCC. Accordingly, the court finds that the State's Saturday closing laws conflict with defendant's ability to amend its bylaws and set its hours of operation and are, therefore, preempted by 12 U.S.C. § 24(Sixth).

### D. *Preemption by 12 U.S.C. § 95*

SPBI further argues that 12 U.S.C. § 95 preempts the State's Saturday closing laws. This section states:

In the event that a State or a State official authorized by law designates any day as a legal holiday for ceremonial or emergency reasons, for the State or any part thereof, that same day shall be a legal holiday for all national banking associations or their offices located in that State or the part so affected. A national banking association or its affected offices may close or remain open on such a State-designated holiday unless the Comptroller of the Currency by written order directs otherwise.

12 U.S.C.S. § 95(b)(1) (Law. Co-op.1978 & Supp.1992). SPBI argues that the objective of Congress was clearly to give national banks the discretion to stay open or close on state-designated holidays. Although the statute is limited to legal holidays and Idaho law does not designate Saturday as such, SPBI argues that this statute in essence turns Saturday into such a holiday. SPBI contends that allowing a state to prohibit business on Saturdays goes against the spirit of Section 95, which is intended to provide national banks with flexibility in determining whether to close

or open for business on state-declared holidays.

The State argues that had Congress intended to allow national banks to remain open on all state-declared holidays, it would have done so without reference to the words "ceremonial or emergency." However, by adding these words, the State argues that the intent of Congress was much narrower than the bank's interpretation of the statute, and only gives the national banks the discretion to stay open or close on only certain limited holidays. Outside of this narrow list of holidays, national banks must comply with state law regarding the other state-designated holidays. The State argues that Saturday is one of those other holidays of which the national banks are bound to observe.

In oral argument, the plaintiff pointed to 12 U.S.C. § 75 as evidence of the intent of Congress that national banks must follow state laws regarding legal holidays. This section states: "When the day fixed in the bylaws for the regular annual meeting of the shareholders falls on a legal holiday in the State in which the bank is located, the shareholders meeting shall be held, and the directors elected, on the next following banking day." 12 U.S.C.S. § 75 (Law. Co-op.1978). Thus, the State argues that Section 75 is further evidence of the intent of Congress to not have national banks operate on state holidays.

Although SPBI and the State differ in their interpretation of 12 U.S.C. § 95, both basically agree that Saturday does not fall within the State's definition of a "legal holiday." However, the court finds that 12 U.S.C. § 95 does evidence congressional intent to allow the national banks some flexibility in deciding whether or not to remain open on State holidays. The legislative history on this section, although brief, states: *"Section 407* amends 12 U.S.C. § 95(b)(1) to authorize a national bank to either stay open or close, at its discretion, on a State-designated holiday...." S.Rep. No. 536, 97th Cong., 1st Sess. 61 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3054, 3115. By allowing the state law to control when the national banks can be open would frus-

trate the intent of Congress in giving the national banks discretion to open or close on state holidays. The court also finds that 12 U.S.C. § 75 does not evidence Congressional intent to the contrary. This section merely reinforces the fact that it is Congress which mandates which holidays the national banks must observe rather than the state. The State's argument fails to take into account the fact that Saturday is not defined by the state to be a "legal holiday." Based upon the foregoing, the court finds that the State's Saturday closing laws are also preempted by 12 U.S.C. § 95(b)(1).

E. *Preemption by 12 U.S.C. § 2901 and 12 U.S.C. § 36, and Interference with Interstate Commerce, and Deprivation of Equal Protection*

SPBI has also argued that the Saturday closing laws conflict with the Community Reinvestment Act of 1978, 12 U.S.C. § 2901, et seq, and 12 U.S.C. § 36. In addition, SPBI argues that the Saturday closing laws unlawfully interfere with interstate commerce, and also deprive the bank of equal protection of the laws in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

The court finds that a determination as to these issues is unnecessary. The court has already found the State's law to be preempted by the federal banking statutes in the above analysis, and this determination sufficiently resolves the issues in this case. Therefore, the court will not address and does not express an opinion on these arguments.

## III. CONCLUSION

Based upon the foregoing, the court finds that the defendant is entitled to summary judgment as a matter of law. The court finds that the defendant is entitled to the requested declaratory relief that the prohibition on Saturday banking by national banks contained in Idaho Code § 26–716, (made applicable to national banks by Idaho Code § 26–107), is preempted by 12 U.S.C. § 24(Seventh), 12 U.S.C. § 24(Sixth), and 12 U.S.C. § 95(b)(1). Accordingly, the court finds that Idaho Code § 26–716 is not controlling in respect to national banking associations operating branches within the State of Idaho.

## IV. ORDER

Based on the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment, filed May 14, 1992, should be, and is hereby, GRANTED to the extent that it is consistent with the above findings. In addition, it is further ordered that the defendant's request for declaratory judgment, should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that the defendant shall, on or before August 7, 1992, submit to the court a proposed judgment consistent with this order.

IT IS FURTHER ORDERED that plaintiff's Motion for Summary Judgment, filed May 15, 1992, should be, and is hereby, DENIED.