**Robert L. BOOTH, Plaintiff,**

v.

**OLD NATIONAL BANK, a national banking corporation and Daniel E. Moffitt, Defendants.**

**Civ.A. No. 3:94CV11.**

United States District Court, N.D. West Virginia.

March 7, 1995.

---

Edward N. Hall, Buckhannon, WV, for plaintiff.

C. David Morrison and Larry J. Rector, Clarksburg, WV, for defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND GRANTING PLAINTIFF'S MOTION TO REMAND

STAMP, Chief Judge.

#### I. Procedural History

This civil action was originally commenced on April 5, 1994 in the Circuit Court of Berkeley County, West Virginia. The plaintiff, Robert L. Booth, alleged that the defendants breached his employment contract by demanding his resignation and that the actions of the defendants amounted to retaliatory discharge and the tort of outrage. On May 5, 1994, the defendants, One Valley Bank, formerly Old National Bank, and Daniel E. Moffitt, removed this civil action to this Court alleging jurisdiction under the Nation-

al Banking Act, 12 U.S.C. § 1 *et seq.* On May 12, 1994, the defendants filed a motion to dismiss. On May 27, 1994, the plaintiff filed a motion to remand and in opposition to the motion to dismiss. On June 10, 1994, the defendants filed their response to the motion to remand and their reply in support of their motion to dismiss.

This Court has reviewed the applicable law and the memoranda in support of and in opposition to the motion to dismiss and the motion to remand. For the reasons stated below, this Court finds that the motion to dismiss should be granted in part and the motion to remand should be granted.

## II. *Facts* [1]

Robert L. Booth had been employed by Old National Bank for approximately twelve years. During this time he received favorable annual evaluations, meritorious service awards and commendation from bank directors and executives concerning the Trust Department growth and operations. The plaintiff was initially employed as Assistant Vice President for the Trust Department. In acknowledgment of the plaintiff's performance, the plaintiff was promoted to Vice President during 1982–83 and then to Senior Vice President during 1984–85. As a senior vice president, the plaintiff acted as the Director of the Trust Department. The plaintiff maintained this position until he was terminated in 1992.

Defendant Moffitt was employed as the President of Old National Bank. In January 1990, Moffitt encouraged the plaintiff to transfer funds invested in a mutual fund account identified as "Federated Investment Fund" to an investment fund maintained as depository in the corporate defendant account identified as "Old National Bank Prime Account." The plaintiff resisted transferring the funds and advised the defendants that the transfer would violate United States Comptroller of the Currency Regulation No. 9. The plaintiff further advised the defendants that the practice was prohibited by a similar state statute, specifically W.Va.Code § 31A–4–18a. The plaintiff informed Moffitt that the Federated Investment Fund, in

which the depositors' accounts were currently invested, was backed by short-term governmental securities and provided a yield between one and two percent above the rate offered by the investment account suggested by Moffitt.

Moffitt tried on several occasions to elicit the plaintiff's approval to transfer the funds from the Federated Investment Fund to the Old National Bank Prime Fund. In December 1991, Moffitt recommended the proposed fund transfer to the Trust Committee of the officers and directors of Old National Bank. Despite warnings from the plaintiff, at the conclusion of the Trust Committee meeting, the transfer of approximately $5 million was approved by the Trust Committee of Old National Bank. Following the meeting, Moffitt directed the plaintiff to make the fund transfer. In February or March of 1992, following an annual compliance audit, a federal banking auditor discovered the violation of Comptroller of Currency Regulation No. 9. The federal banking auditor directed the plaintiff, as the responsible party, to comply with the regulation by redepositing the funds kept and maintained in the Old National Bank Fund. Specifically, the auditor directed the plaintiff to transfer any account balances over $1,000.00 to a higher yielding fund or permanent secure investment. The plaintiff complied with the federal banking auditor.

Following the retransfer of funds, Moffitt accused the plaintiff of transferring the deposits in an effort to reduce bank assets and to demean the performance of Moffitt. Thereafter, Moffitt, acting within the scope of his employment, further accused the plaintiff of delivering an inaccurate 1099 miscellaneous income IRS form and a written memoranda evidencing displeasure with the plaintiff's performance. The defendants then began demanding a written status report and weekly presentation for the Trust Department. The defendants also began closed session meetings with the Trust Committee without the participation of the plaintiff in which the plaintiff's reports and conduct

---

**1.** In accordance with the applicable standard of review, stated below, this Court will accept, for the purposes of deciding this motion, the factual allegations contained in the complaint as true.

were criticized and questioned. The defendants then directed the plaintiff not to communicate with any bank board member independent of the presence of Moffitt. Plaintiff was threatened with immediate termination if he violated this order. The defendants further solicited co-employees of the plaintiff to gather information against the plaintiff so that he could be discredited or discharged.

Eventually, Moffitt tendered to the plaintiff a written letter of resignation for the plaintiff's signature. The plaintiff requested an explanation and legal consultation. Moffitt stated that if the plaintiff did not sign the letter, the plaintiff would be discharged and that under any circumstances the plaintiff was not to return the next business day. The plaintiff questioned whether it mattered if he signed the letter or not to which Moffitt replied that if plaintiff signed it, he might be able to get one month's severance pay plus an agreement by the defendant to refrain from producing any bad references upon job performance inquiries from potential employers of the plaintiff. The plaintiff then declared that he would sign the resignation under protest and duress. At no time did defendants offer accusations of poor job performance or any other reason for termination. All of the above actions by Moffitt were brought to the attention of the upper level management of Old National Bank.

In the complaint, the plaintiff alleges two causes of action. Count I is a claim of retaliatory discharge and outrageous conduct under *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). Count II is a breach of contract claim alleging a contract arose out of an employee handbook which the defendants then breached. In the motion to dismiss, the defendants contend that the plaintiff's claims are preempted by the National Bank Act, 12 U.S.C. § 1 *et seq.* The defendants further contend that the plaintiff has failed to properly allege a claim for wrongful discharge as the complaint alleges a violation of federal law rather than state law. The defendants also contend that there is no cause of action for breach of implied in fact contract as the employee handbook did not create a contract. In the motion to remand, the plaintiff con-

tends that, under the well pleaded complaint rule, the complaint does not provide a basis for federal jurisdiction.

### III. *Applicable Standards for Motion to Dismiss*

In assessing a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the court must accept the factual allegations contained in the complaint as true. *Advanced Health–Care Services, Inc. v. Radford Community Hosp.,* 910 F.2d 139, 143 (4th Cir.1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if " 'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.' " *Id.* at 143–44 (*quoting Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969)); *see also Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil* 2d § 1356 (1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Fed.R.Civ.P. 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Fed.R.Civ.P. 8(a).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. *Rogers,* 883 F.2d at 325. A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that plaintiff does not have a claim and that no set of facts would support plaintiff's claim. 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil* 2d § 1357 (1990).

■ Finally, "[a] district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice. That determination is within the district court's discretion." *Carter v. Norfolk Community Hosp. Ass'n,* 761 F.2d 970, 974 (4th Cir.1985).

## IV. *Discussion*

12 U.S.C. § 24 (Fifth) states that:

[A national banking association shall have power] to elect or appoint directors, and by its board of directors to appoint a president, vice-president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.

In construing this statute, several courts have addressed the scope of the National Bank Act's preemption of state law. In *Wiskotoni v. Michigan National Bank–West,* 716 F.2d 378 (6th Cir.1983), the Court held that

[12 U.S.C. § 24 (Fifth) ] has consistently been construed by both federal and state courts as preempting state law governing employment relations between a national bank and its officers and depriving a national bank of the power to employ its officers other than at pleasure.

*Id.* at 387 (citing *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1097 n. 3 (9th Cir.1981) (dictum)); *see also Westervelt v. Mohrenstecher,* 76 F. 118, 121 (8th Cir.1896); *Alfano v. First National Bank of Highland,* 111 A.D.2d 960, 490 N.Y.S.2d 56 (1985) (holding that "[12 U.S.C. § 24 (Fifth) ] preempts all state law and it alone governs in those instances in which officers of national banks are dismissed"); *Wells Fargo Bank v. San Francisco,* 53 Cal.3d 1082, 282 Cal.Rptr. 841, 811 P.2d 1025 (1991) (holding that "it has been established for almost a century that § 24 preempts all state law causes of action by a bank officer for breach of an employment agreement"); *Ambro v. American National Bank & Trust Co. of Michigan,* 152 Mich.App. 613, 394 N.W.2d 46 (1986); *City National Bank of Baton Rouge v. Brown,* 599 So.2d 787 (La.App.1992).

■ However, this preemption does not amount to complete preemption. As noted by the court in *Watson v. First Union National Bank of South Carolina,* 837 F.Supp. 146 (D.S.C.1993), the United States Supreme Court has applied the complete preemption doctrine in only three areas. These areas are: (1) claims relating to ERISA, (2) claims concerning Indian tribal land, and (3) claims under the Labor Management Relations Act. The court further noted that the Fourth Circuit has found complete preemption concerning federal copyright law. When discussing the National Bank Act, the *Watson* Court held that "the vast majority of the courts that have discussed *this issue* have concluded that the National Bank Act fits with the complete preemption doctrine and thus allows removal of an action even when the complaint is based solely on state law." *Id.* at 149 (emphasis added). The "issue" referred to by the court in *Watson* was usury. Thus, the National Bank Act does not completely preempt all claims concerning national banks but rather, preemption is limited to certain types of claims such as usury or, as noted above, breach of contract.

Beyond preemption, courts have held that contracts that conflict with 12 U.S.C. § 24 (Fifth) are void. In *Mackey v. Pioneer National Bank,* 867 F.2d 520 (9th Cir.1989), the Court held that

[12 U.S.C. § 24 (Fifth) ] has been consistently interpreted to mean that the board of directors of a national bank may dismiss an officer without liability for breach of the agreement to employ ... an agreement which attempts to circumvent the complete discretion of a national bank's board of directors to terminate an officer at will is void against public policy.

*Id.* at 524. *See also City National Bank of Baton Rouge v. Brown,* 599 So.2d 787 (La. App.1992).

Similarly, in *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981), the court, construing a virtually identical statute from the Federal Reserve Act, stated that

Attempts to create [process or tenure rights] by reference to independent sources are violative of the statute and void thereunder. Assuming that Bollow

would indeed have been entitled to certain process rights under California law, such law when applied to reserve bank employees conflicts with Section 4, Fifth.

*Id.* at 1098. Generally, courts have held that, under the National Bank Act, a national banking association has the power to dismiss officers at pleasure and that a board of directors of a national bank may dismiss a bank officer without incurring liability for wrongful discharge or breach of contract. *See Kemper v. First National Bank in Newton,* 94 Ill.App.3d 169, 49 Ill.Dec. 799, 418 N.E.2d 819 (1981) and cases cited therein.

Thus, courts have consistently held that a bank officer may not bring a claim for wrongful termination or breach of contract following his dismissal by a bank's board of directors. However, these cases do not address the issue of retaliatory discharge of a bank officer following that officer's refusal to violate public policy. This Court notes that where a conflict exists between the law of a state and a federal statute and a court cannot resolve the conflict by its judgment as to the wisdom or need of either conflicting policy, under the Constitution, the state enactment must yield to the policy expressed by the federal enactment. *See Franklin National Bank of Franklin Square v. New York,* 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954). Stated another way, as Congress has not completely preempted the entire banking field, any preemption must arise out of an actual conflict between a federal and state law. Moreover, even though Congress may not have specifically addressed the issue in this case, "federal law can still preempt the state law to the extent that the state law 'stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.'" *Idaho v. Security Pacific Bank,* 800 F.Supp. 922 (D.Idaho 1992) (citing *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)).

This Court has found only one case that addresses retaliatory discharge of a bank

officer, *Sargent v. Central National Bank & Trust Company of Enid, Oklahoma,* 809 P.2d 1298 (Okla.1991). In *Sargent,* a bank auditor brought a claim alleging that the defendant discharged him for refusing to violate a well-defined public policy of the State of Oklahoma. In addressing whether 12 U.S.C. § 24 (Fifth) preempted such a cause of action, the court held that "preemption does not shield the defendant bank from tort liability for dismissing an employee in violation of a state public policy which is consistent with the federal statute's purpose." *Id.* at 1299. The court noted that § 24 (Fifth) bestowed upon banks, for the sake of their financial integrity, the right to discharge officers and directors at pleasure. However, the court stated that "we view this right as not without a limit. When, as in this case, the public policies whose violation gives rise to a *Burk* [2] claim parallels that of a federal law which is sought to be invoked as a shield from liability, preemption is not available as a defense." *Id.* at 1302 (citing *Schey v. Trans Pacific National Bancorp,* 266 Cal. Rptr. 39 (Cal.App. 1st Dist.), *cert. denied,* 498 U.S. 851, 111 S.Ct. 144, 112 L.Ed.2d 110 (1990) (holding that the at pleasure language of § 24 (Fifth) was not intended to allow a national bank officer to be discharged in retaliation for reporting a regulatory violation to the Comptroller of the Currency)). The *Sargent* court then addressed the plaintiff's contract claims finding that 12 U.S.C. § 24 (Fifth) does preempt such claims.

In this case, the plaintiff has made two claims. A claim for retaliatory discharge and a claim for breach of an implied contract. This Court finds that it has subject matter jurisdiction as to the breach of the implied contract claim in Count II since resolution of this claim depends upon interpretation of federal law. *See City National Bank v. Edmisten,* 681 F.2d 942, 945 (4th Cir.1982). As noted in *Watson* and *Security Pacific Bank,* Congress has not completely preempted the entire banking field as it has in ERISA, LMRA and claims concerning Indian tribal land. However, where there is a direct con-

---

**2.** A claim under *Burk v. K–Mart,* 770 P.2d 24 (Okla.1989), is substantially similar to a *Harless* retaliatory discharge claim.

flict between state and federal law, the federal law preempts the state law. Such a conflict exists concerning a breach of contract claim by a bank officer against a bank. As stated in *Wiskotoni*, courts have consistently construed 12 U.S.C. § 24 (Fifth) as preempting state law governing employment relations between a national bank and its officers. Accordingly, this Court finds that it has subject matter jurisdiction as to Count II.

 Addressing the merits of the breach of contract claim, this Court finds that under *Mackey* and *Bollow* the plaintiff cannot maintain a breach of contract action against a bank in light of 12 U.S.C. § 24 (Fifth). 12 U.S.C. § 24 (Fifth) was intended to give a bank's board of directors discretion in the hiring and dismissal of officers of the bank.[3] As stated by the Court in *Mackey*, "an agreement which attempts to circumvent the complete discretion of a national bank's board of directors to terminate an officer at will is void against public policy." *Mackey*, 867 F.2d at 524. Accordingly, this Court finds that any express or implied contract between the plaintiff and the defendant would be void against public policy. This Court further finds that the defendants' motion to dismiss as to the contract claim should be and hereby is GRANTED.[4]

 Addressing the retaliatory discharge and outrage count, this Court agrees with the rationale in *Sargent* that preemption does not shield a defendant bank from tort liability for retaliatory discharge when the state's public policy is consistent with the federal statute's purpose. As the *Sargent* court noted, 12 U.S.C. § 24 (Fifth) gave banks the right to discharge officers and directors at pleasure. This right, however, is tempered by restrictions based on state law which are consistent with federal policy. In this case, this Court can find no conflict between any federal statute and the West Virginia law concerning retaliatory dis-

charge. The defendant relies upon *Ambro* for the proposition that 12 U.S.C. § 24 preempts a *Harless* claim. The *Ambro* court found that § 24 (Fifth) preempted a wrongful discharge claim under Michigan law based on *Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). Although defendants suggest that a *Toussaint* claim is similar to a *Harless* claim, this Court finds that *Toussaint* did not address a retaliatory discharge claim but rather a claim based on an implied contract which arose from an employer's general policies. This Court finds that, although 12 U.S.C. § 24 (Fifth) preempts the breach of contract claim, 12 U.S.C. § 24 (Fifth) does not preempt a claim for retaliatory discharge. Thus, this Court does not have jurisdiction to hear this claim. Furthermore, pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over this claim. Additionally, this Court finds that remanding this action will allow the West Virginia courts to address whether the plaintiff has properly alleged retaliatory discharge based on a violation of a state statute, rather than a federal statute. Accordingly, the plaintiff's motion to remand as to Count I should be and hereby is GRANTED and this action is STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit copies of this order to counsel of record herein and to the Circuit Court of Berkeley County, West Virginia.

---

3. This Court agrees with the defendant's interpretation that the plaintiff's final allegation that all alleged actions were approved by the corporate defendant amount to an allegation that the actions were approved by the board of directors. Thus, 12 U.S.C. § 24 (Fifth) is applicable. *See Schey*.

4. As 12 U.S.C. § 24 (Fifth) would render any contract, express or implied, void against public policy, this Court makes no specific finding as to whether an implied contact existed between the plaintiff and the defendant based upon the employee handbook.