**Jo A. HENEGAR, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, a foreign corporation, Defendant.**

**Civil Action No. 3:96–CV–49.**

United States District Court,
N.D. West Virginia.

Feb. 13, 1997.

*Old Nat. Bank,* 900 F.Supp. 836, 840 (N.D.W.Va.1995) (citation omitted). In this regard, it is to be distinguished from a Fed. R.Civ.P. 56 motion for summary judgment, "which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact." *Id.* In the Fourth Circuit, it is well settled that:

> a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff (citations omitted).

*Mylan Laboratories Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied, sub nom, American Home Products Corp. v. Mylan Laboratories,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

## II. *Background*

As set forth above, the Court accepts a plaintiff's factual allegations as true when deciding a 12(b)(6) motion. Based on this assumption, the following, taken from plaintiff's complaint, represents the background to this case.

Plaintiff Jo A. Henegar (hereinafter "Plaintiff"), formerly Jo A. Hensell, was hired by defendant in July 1991 to work in its Martinsburg, West Virginia store and remained employed there for over three years. In October 1994, while undergoing a divorce, she requested, and was granted, a transfer to a Sears store in Myrtle Beach, South Carolina. At the end of October 1994, she began living with Doug Henegar, a fellow employee. Henegar was married but separated from his spouse at this time.

The relationship between plaintiff and Henegar offended the religious beliefs of Doug Perry, the Myrtle Beach Sears store manager. As a consequence, he sought to impose restrictions on their conduct both within and outside the workplace. In particular, Perry, aware that Henegar and plaintiff had been seen riding a motorcycle together on a non-work day, informed him that he was

Harry P. Waddell, Wilkes & Waddell, Martinsburg, WV, for Plaintiff.

Monica N. Haddad, Morgantown, WV, Louis C. Long, Pittsburgh, PA, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, WV, Debra M. McCulloch, Detroit, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

This matter comes before the Court on defendant Sears, Roebuck and Company's (hereinafter "Defendant") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the Court finds that the motion should be granted in part and denied in part.

## I. *Standard of Review*

A Rule 12(b)(6) motion to dismiss functions "to test the formal sufficiency of the statement of the claim for relief, it is not a procedure for resolving a contest about the facts or the merits of the case." *Booth v.*

not to ride to work with plaintiff. Furthermore, sales manager Barbara Vaught, acting at Perry's direction, instructed plaintiff that she could neither eat lunch or take other breaks with Henegar, nor appear in the same vehicle with him.

In November 1994, plaintiff was hospitalized for stress. On or about December 20, 1994, she met with Perry regarding her return to work. During this meeting, Perry reiterated that plaintiff was forbidden to take lunches or breaks with Henegar. Plaintiff, unwilling to submit to these restrictions, tendered her resignation and returned to West Virginia.

In February 1995, plaintiff returned to Myrtle Beach and contacted Ms. Vaught. Vaught told plaintiff about a job opening at Sears. Thereafter, Perry informed plaintiff that no position was available for her. In September 1995, Henegar began working in the defendant's store in Hagerstown, Maryland. The Hagerstown operations manager informed Henegar that there was a job available for plaintiff in the store's hardware department. Plaintiff interviewed for this position and was told that her earlier resignation would not be problematic. After the Hagerstown store manager consulted with Perry, however, plaintiff was informed that no job was available.

Finally, in January 1996, a worker at defendant's Martinsburg store extended an offer of employment to plaintiff. At this time, defendant was advertising for employees. Nevertheless, when plaintiff later contacted the store's human resources department, she was told that no positions were available and that, in any event, she most likely would not have been hired had such positions existed.

On June 12, 1996, plaintiff filed suit against defendant in the Circuit Court of Berkeley County, West Virginia. In her complaint, it is alleged that:

> The Plaintiff was qualified, able and competent to perform the services required by the Defendant in its Martinsburg store in January 1996. The Plaintiff was denied an

equal opportunity to apply for the positions available and to be hired due to the Defendant's unlawful discrimination on the basis of religion, sex and familial status in violation of the West Virginia Human Rights Act.

Defendant subsequently removed the matter to this Court and filed its Motion to Dismiss on November 5, 1996. In this motion, defendant argues that plaintiff's allegations of discrimination on the basis of religion and familial status both fail to state a claim upon which relief can be granted.

### III. *Discussion*

#### A. The Religion Claim

■ Defendant argues that plaintiff's religious discrimination claim fails to make out a cause of action under the West Virginia Human Rights Act, W.Va.Code, § 5–11–1 *et seq.* (1994) (hereinafter "Act") because: 1) she has failed to plead a religious belief of her own that would place her in a class protected by the statute and 2) she has not alleged that her supervisor's religious, as opposed to moral, views motivated the disputed hiring decision. Plaintiff counters that her complaint indeed sets forth the claim that she was denied an equal opportunity to obtain work at Sears as a result of her supervisor's religious beliefs. She insists, moreover, that this allegation states a cause of action for religious discrimination under the Act. The Court finds plaintiff's position more persuasive.

■ Section 5–11–9(1) of the Act makes it unlawful for an employer "to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required ..." The evidentiary standards for suits brought pursuant to the Act are identical to those applicable to claims asserted under the anti-employment discrimination provisions of the Act's federal counterpart, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994).[1] *Heston v.*

1. Section 2000e–2(a)(1), the Title VII analogue to § 5–11–9(1) of the Act, makes it unlawful for an employer:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensa-

*Marion County Parks and Recreation Comm'n,* 181 W.Va. 138, 381 S.E.2d 253, 256 (1989). *See, e.g., State ex rel. State of W.Va. Human Rights Comm'n v. Logan–Mingo Area Mental Health Agency Inc.,* 174 W.Va. 711, 329 S.E.2d 77 (1985) (applying Title VII evidentiary standards for disparate treatment, discriminatory discharge claims to analogous claims brought under the Act).

■■■ In *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983), the Supreme Court of Appeals of West Virginia, borrowing from Title VII, set forth the evidentiary standards which govern when a party brings suit under the Act alleging sexual discrimination in hiring. Under these circumstances, a prima facie case of discrimination is established when it is shown:

> (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection, the respondent continued to accept the applications of similarly qualified persons.

*Id.* 309 S.E.2d at 352. In the religious discrimination context, a Title VII plaintiff makes out a prima facie case by proving:

> (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief, and, (3) he or she was not hired or promoted, fired, or otherwise discriminated against for failure to comply with the conflicting employment requirement.

*Cary v. Carmichael,* 908 F.Supp. 1334, 1342–43 (E.D.Va.1995).

■■■ Nevertheless, the issue that this motion presents—whether a plaintiff has a cause of action for religious discrimination under the Act when she claims she was passed over for a job because of her employer's beliefs—is apparently a matter of first impression. In fact, the Court is unaware of any reported decision involving an allegation of religious discrimination under the Act. Courts have, however, addressed the question of whether such an allegation states a claim under the federal anti-employment discrimination statute. Additionally, it is well settled in West Virginia that the Act should be construed "to coincide with the prevailing federal application of Title VII" unless variations in statutory language or other compelling reasons require a different result. *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741, 754 (1995). Accordingly, the Court turns to the relevant Title VII authority for guidance in the present matter.

In *Shapolia v. Los Alamos Nat. Laboratory,* 773 F.Supp. 304 (D.N.M.1991), a terminated employee brought a Title VII action alleging that he was discriminated against because he, as a non-Mormon, did not share his supervisors' religious beliefs. *Id.* at 305. Thereafter, the Court denied defendants' 12(b)(6) motion to dismiss, finding that plaintiff's allegation supported a claim for religious discrimination claim under Title VII. *Id.* Nevertheless, after the initiation of discovery, the Court subsequently granted defendants' summary judgment motion on the Title VII claims.

■■■ On appeal, the Tenth Circuit affirmed the district court's summary judgment ruling. *Shapolia v. Los Alamos Nat. Laboratory,* 992 F.2d 1033 (10th Cir.1993). In so holding, the Court observed that Mr. Shapolia's action "approximates those straightforward disparate treatment cases in which the plaintiff claims that she was terminated because of her sex or race." *Id.* at 1037 (citations omitted). However, after noting the lack of a "neat fit" between the standard for establishing a traditional claim of racial or sexual discrimination and the facts of the case, the Court declined to apply the prima facie requirements that normally govern sex and race discrimination discharge cases. *Id.* at 1038.[2] Instead, it held that a plaintiff who

tion, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

2. The Court observed that a plaintiff must demonstrate the following to establish a prima facie case in a race or sex discrimination discharge matter:

maintains that he was discriminated against because he did not share his employer's religious beliefs must, in order to make out a prima facie case, show:

> (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs (footnotes omitted).

*Id.*

In addition to the Tenth Circuit, other jurisdictions have addressed the issue of whether a Title VII discrimination action lies when a plaintiff alleges that an adverse employment decision resulted from his or her failure to share an employer's religious views. *See, e.g., Turic v. Holland Hospitality, Inc.*, 849 F.Supp. 544 (W.D.Mich.1994), *aff'd. in part, rev'd in part*, 85 F.3d 1211 (6th Cir.1996) (holding that plaintiff stated claim under Title VII when she alleged that she was fired because her contemplated abortion offended the religious views of her co-workers); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703 (6th Cir.1985) (finding that Title VII plaintiff made out case of discrimination when he demonstrated that his employer treated him less favorably after he changed his previously agreeable religious views). *But see McCrory v. Rapides Regional Medical Center*, 635 F.Supp. 975 (W.D.La.1986), *aff'd*, 801 F.2d 396 (5th Cir.1986) (unpublished table decision) (holding that plaintiffs did not state claim under 42 U.S.C. § 2000e–2(a)(1) when they alleged that their discharge resulted from conduct repugnant to their employer's religious beliefs).

The Court concludes that *Shapolia* is well reasoned and expressive of the prevailing federal standard applicable to Title VII religious discrimination claims. Moreover, the Court finds the *Shapolia* approach consonant with the Supreme Court of Appeals of West Virginia's consistently broad interpretation of the Act. *See Shepherdstown Volunteer Fire Dept*, 309 S.E.2d at 348. Finally, the Court is convinced that this decision embraces a notion of religious discrimination consistent with the concept of religious harassment as set forth in the West Virginia Code of State Rules.[3] Therefore, the Court holds that the Tenth Circuit's view of Title VII "non-adherence" claims should govern analogous religious discrimination actions brought under the Act. Accordingly, the fact that plaintiff has not pled her own religious beliefs does not compel the conclusion that she has failed to state a claim upon which relief can be granted.

Plaintiff's failure to specifically identify her former supervisor's religion does not entitle defendant to a 12(b)(6) dismissal. On this issue, defendant contends that the "supervisor's alleged 'religious beliefs' are actually moral standards which are not even associated with a particular religion ..." Therefore, the defendant insists that plaintiff's allegations do not support a claim for religious discrimination. In so arguing, the defendant does not challenge the legal adequacy of plaintiff's complaint, but rather contests the accuracy of the facts which underlie it. As a consequence, the Court cannot dismiss plaintiff's claim on this basis.

---

> (i) that he belonged to a protected class; (ii) that his job performance was satisfactory; (iii) that he was discharged; and (iv) that, after he was discharged, the position remained open to similarly qualified applicants (citations omitted).
>
> *Id.* at 1038.

**3.** Section 77–3–4 of the West Virginia Code of State Rules, Religious Harassment, provides in relevant part:
> 4.1. Unwelcome comments, jokes, acts and other verbal or physical conduct may constitute religious harassment when:

> 4.1.1. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;
> 4.1.2. Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or
> 4.1.3. Such conduct has the purpose of(sic) effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

As indicated above, a court reviewing a 12(b)(6) motion must accept plaintiff's factual allegations as true and should grant the motion only when these allegations "clearly demonstrate that plaintiff does not have a claim ..." *Booth v. Old Nat. Bank,* 900 F.Supp. at 840. In the present matter, plaintiff asserts, at paragraph six of her complaint, that her relationship with Henegar outraged the manager of defendant's Myrtle Beach store as a result of the latter's "personal religious beliefs." Paragraph fifteen avers that plaintiff, despite her qualifications, was not hired in January 1996 "due to the [d]efendant's unlawful discrimination on the basis of religion ..." The Court is convinced that these two sections can be collectively read to allege that plaintiff suffered an adverse hiring decision because her prior conduct had offended her former supervisor's religious beliefs. Since this allegation states a cause of action under the Act, defendant's motion to dismiss the religious discrimination claim must be denied. Nevertheless, today's holding does not mean that the Court will not, after the facts have been more fully developed, consider a motion for summary judgment on the religious discrimination claim in accordance with the *Shapolia* decision.

## B. The Familial Status Claim

Subsequent to the filing of defendant's motion to dismiss, plaintiff conceded "that familial status discrimination does not extend to the employment context" and agreed to "abandon this theory of liability." Defendant's motion to dismiss the familial status claim is accordingly granted.

### IV. *Conclusion*

Based on the foregoing, defendant's motion to dismiss plaintiff's religious discrimination claim is hereby ORDERED DENIED and its motion to dismiss plaintiff's familial status discrimination claim is ORDERED GRANTED, with prejudice.

The Clerk is directed to transmit copies of this order to counsel of record herein.