**Angel A. MARTINEZ COLON, et al., Plaintiffs,**

**v.**

**SANTANDER NATIONAL BANK, et al., Defendants.**

**Civil No. 97–1894 (JP).**

United States District Court, D. Puerto Rico.

April 1, 1998.

---

Luz Conchita Toro Rivera, Mayaguez, P.R., for plaintiff.

Lisa E. Bhatia Gautier, Asst. U.S. Atty., Hato Rey, P.R., for defendant.

*OPINION & ORDER.*

PIERAS, District Judge.

## I. INTRODUCTION & BACKGROUND

■ The Court has before it Defendants'· Motion to Dismiss [1] (**dockets No. 37 and** 42) and Plaintiffs' Reply to Motion to Dismiss (**docket No. 43**). Plaintiffs, Angel Martínez–Colón ("Martínez"), his wife Violeta Colón–Rivera ("Colón"), and Triple A Auto, Inc., bring this action against Defendants, Banco Santander de Puerto Rico ("Banco Santander" or the "Bank"), Santander National Bank, Lourdes Morales ("Morales"), and Luz Anabelle López ("López"); alleging violations of the Bank Secrecy Act, 12 U.S.C. §§ 1951–59 and 31 U.S.C. §§ 5301–22, and the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–22, and for breach of contract, defamation, and libel.

Specifically, Plaintiffs make the following allegations: [2]

1. Coplaintiff Martinez began banking with Defendant's predecessor [3] in 1968

---

1. Defendants' motion, although styled a motion to dismiss, also ostensibly contains a motion for summary judgment under Rule 56. Indeed, most of Defendants' arguments are included under the section of Defendants' motion entitled "Motion for Summary Judgment." But the Court finds that none of Defendants' arguments rely on matters outside of the pleadings, so the Court will consider Defendants' arguments as a Motion to Dismiss. When addressing a motion to dismiss brought under Rule 12(b)(6), a Court must "accept as true all well-pleaded factual averments and indulge all reasonable inferences in the plaintiff's favor." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996). Dismissal under Rule 12(b)(6) is "appropriate if the facts alleged, taken as true, do not justify recovery." *Id.* To put it simply, the Court must look leniently at the allegations in the plaintiffs, complaint and

determine if those allegations "can reasonably admit of a claim." *Id.*

2. The Court takes these allegations directly from the Complaint. Fed.R.Civ.P. 12(b)(6). The legal conclusions contained in ¶s 7, 8, & 9 are taken from the Complaint and incorporated herein solely to facilitate the reader's understanding of Plaintiffs' Complaint. The Court, of course, gives them no weight.

3. Martinez initially began. banking with Bayamón Federal Savings. Bayamon Federal merged with Santander National Bank, which ultimately became known as Banco Santander. As the rights and/or obligations of these entities have never been distinguished, and as it has no bearing on the Court's analysis, henceforth, the Court's use of the name Banco Santander may include by reference each of these institutions.

and maintained their banking relationship until the events underlying this action transpired.

2. Martinez entered his father's business of selling clothing and vegetables at a young age, eventually taking over the business at age twenty-three. In 1982, Martinez acquired a farm in Barranquitas, the profits from which provided most of his savings that he kept in the form of Certificates of Deposit with Banco Santander.

3. As a result of an accident, Martinez was forced to give up his personal involvement in his farming business. He continued with his agricultural contracts, however, even after he was no longer personally involved in farming. Because he was a close personal friend of Banco Santander officials, those officials knew of Martinez's condition and situation.

4. After an extended convalescence, Martinez moved to Bayamon where he started a used car business, Triple A Auto, Incorporated, in 1986.

5. In 1992, Plaintiffs had their commercial and personal accounts with Banco Santander. Having been a Banco Santander customer for nearly twenty-two years and maintaining considerable amounts of money in his accounts there, he was afforded preferential treatment consisting of, among other things, not having to wait in line to conduct transactions.

6. As part of Martinez's used auto sales operations, Plaintiffs occasionally purchased Manager's Checks from Santander. Sometimes, these checks exceeded $10,000.00; sometimes, however, they were for less than $10,00.00 but would total more than $10,000.00 in a single day.

7. This course of conduct established a contractual relationship whereby the parties agreed to comply with state and federal law. That agreement had force even if not express. That contractual relationship established an obligation for Banco Santander and its officials to strictly comply with the Bank Secrecy Act and Banking Regulations.

8. Defendants failed their obligation to comply with 31 C.F.R. § 103.22 by filing Currency Transaction Reports ("CTRs") required for transactions involving more than $10,000.00 (and/or lesser amounts that totaled more than $10,000.00 in a single banking day). This failure was known to Lopez at all times.

9. Lopez and Morales were trained in their duties under the federal banking laws. They knew how to identify illegal transactions and of their obligation to file Currency Transaction Reports for exchanges of more than $10,000.00 (or aggregating more than $10,000.00 in a single day). Notwithstanding their expertise, Lopez and Morales failed on several occasions to file CTRs regarding Plaintiffs' accounts and to inform Plaintiffs that their transactions could constitute a pattern of currency transactions and could appear suspicious to law enforcement agents.

10. Morales, acting in bad faith, falsely accused Plaintiffs of structuring transactions to avoid the Bank Secrecy Act reporting requirements and/or to conduct money laundering and drug trafficking schemes, with the purpose of ruining Plaintiffs reputation.

In the Claims for Relief section of their Complaint, Plaintiffs assert that "the actions and/or omissions of [Defendants require] an award of damages for libel and breach of the contractual relationship maintained with plaintiffs." Nowhere in that section do Plaintiffs invoke any federal statutes. Nonetheless, other sections of Plaintiffs' Complaint do invoke federal law, stating Defendants' actions "constitute a serious violation to Federal Banking Law to Right of Financial Privacy Act [sic]." Piecing together the fragments of Plaintiffs' scattered Complaint, the Court is able to surmise four potential causes of action—for breach of contract, libel/defamation, violation of the Bank Secrecy

Act, and violation of the Right to Financial Privacy Act. ·

Defendants now move the Court to dismiss on the following grounds: First, Plaintiffs' claims under Article 1802 of Puerto Rico's Civil Code are time-barred. P.R.Laws Ann. tit. 31 § 5298. Next, Plaintiffs' Complaint fails, as a matter of law, to state or imply a claim for malicious prosecution and/or Plaintiffs cannot adduce sufficient evidence from which a reasonable jury could find Defendants liable for malicious prosecution.[4] Finally, Defendants assert that Plaintiffs have no standing to sue under either of the two federal statutes Plaintiffs have invoked. Specifically, Defendants argue that the Bank Secrecy Act provides no private right of action and that they are protected from liability under the Right to Financial Privacy Act. The Court will address each of Plaintiffs' claims in turn.

## II. ANALYSIS

### A. Bank Secrecy Act

The Bank Secrecy Act requires domestic banks to report any transactions· of more than $10,000.00, as well as any transactions that appear to have been structured to avoid the $10,000.00 reporting requirement. 31 U.S.C. §§ 5313, 5324; 31 C.F.R. · § 103. Banks must submit these Currency Transaction Reports ("CTRs") to the Internal Revenue Service within 15 days of the transaction in question. *Id.* Because "structuring"[5] is a crime under 31 U.S.C. § 5324(a), any bank that knows of or suspects such activity must also file Criminal Referral Forms (CRFs) with the government. 12 C.F.R. § 21.11(a).

▉ Defendants assert that the Bank Secrecy Act does not provide for a private or independent cause of action for the clients of financial institutions. The parties have not provided, and the Court has not found, any cases in which a court has decided whether or not a private cause of action exists under the Bank Secrecy Act. Legislative intent de-

termines whether a federal statute allows for a private cause of action. *Sterling Suffolk Racecourse Ltd. Partnership v. Burrillville Racing Assoc. Inc.*, 989 F.2d 1266, 1268–69 (1st Cir.1993); *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In addition, "there is a presumption against implied rights of action—a presumption that will endure unless the plaintiff proffers adequate evidence of a contrary congressional intent." *Stowell v. Ives*, 976 F.2d 65, 70 n. 5 (1st Cir.1992). The Bank Secrecy Act provides for civil and criminal penalties, but a defendant's only liability is to the government, and, in particular, to the Secretary of the Treasury. 31 U.S.C. §§ 5321–22. Congress' purpose in enacting the statute was to ensure that certain business records assist government agencies in conducting criminal, tax, or regulatory investigations. 12 U.S.C. § 1951. The Court finds no reason, and Plaintiffs have failed to point to one, for rebutting the presumption against implied rights of action. Therefore, the Court holds that Plaintiffs have no cause of action under the Bank Secrecy Act.

### B. Puerto Rico Law Claims for Libel and Defamation

▉ Plaintiffs have asserted that Defendants conduct was libelous and defamatory. They have invoked the Court's supplemental jurisdiction and now claim damages for the alleged libel and defamation under Article 1802 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31 § 5141. Article 1868 of the Civil Code, P.R.Laws Ann. tit. 31 § 5298, provides that actions under Article 1802 shall be subject to a one-year period of limitations. Defendants assert that Plaintiffs' claims for defamation and libel are time-barred. Specifically, Defendants assert that the Complaint establishes a time-line for the allegedly defamatory/libelous conduct beginning on or after April 30, 1992 and ending on July 29, 1992. Plaintiffs do not contest this assertion, but argue that the extent of

---

4. Plaintiffs accept that this "case was never filed on grounds of malicious persecution [sic]." As Plaintiffs concede this point, the Court will not address it.

5. "Structuring," means utilizing transactions designed to avoid the reporting requirements of the Act. For example, making multiple transactions involving $9,900.00 could be considered an attempt to "structure" transactions.

the damages resulting from that conduct was not known until September 13, 1995, when Martinez "was compelled to sign a stipulation for forfeiture" in civil case, 92–2648(HL).[6] The Court disagrees with Plaintiffs' argument. The damages resulting from the alleged defamation and/or libel would have been to Plaintiffs' character. The stipulation had nothing to do with such damages. The Court agrees with Defendants that the statute of limitations began running, according to the Complaint, no later than November 9, 1992, the day on which the government seized Plaintiffs' properties in the civil forfeiture proceedings. At that time, at the latest, Defendants knew or should have known of the conduct they now allege to have been libelous and/or defamatory. Therefore, the Court holds that Plaintiffs claims under Article 1802 are time-barred.

### C. Right to Financial Privacy Act ("RFPA")

 The RFPA, 12 U.S.C. §§ 3401–3422, prohibits banks from disclosing the financial records of its customers without authorization. Plaintiffs claim that Defendants violated the RFPA when codefendant Morales reported allegedly suspicious transactions to "federal authorities."[7] Plaintiffs have never maintained that the substance of what Morales conveyed to the federal author-

ities was false—only that the disclosure was unauthorized and, therefore, in violation of the RFPA. Defendants assert that they are protected from liability under 12 U.S.C. § 3403(c), which provides:

> Nothing in this chapter shall preclude any financial institution from notifying a Government authority that such institution has information which may be relevant to a possible violation of any statute or regulation. Such information may include only the name or other identifying information concerning any individual, corporation, or account involved in and the nature of any suspected criminal activity. Such information may be disclosed notwithstanding any constitution, law, or regulation of any state or political subdivision thereof to the contrary. Any financial institution ... making a disclosure pursuant to this subsection shall not be liable to the customer under any law or regulation of the United States or any constitution, law, or regulation of any state or political subdivision thereof, for such disclosure or for any failure to notify the customer of such disclosure.[8]

The Court holds that the allegations levied by Plaintiffs fall squarely within the exception provided. The bank, through Morales, volunteered the information to the IRS and the FBI. The information clearly "may have been relevant to a possible violation of" 31

---

**6.** Although not specifically described in the Complaint, Martinez was criminally charged with making false statements to the bank for the purpose of obtaining a loan. *See United States v. Martinez Colon*, Cr. No. 95–210(DRD). Moreover, the government instituted a civil forfeiture procedure against various of Plaintiffs' property. The criminal case was dismissed pursuant to a stipulation of forfeiture in the civil case, by which Plaintiffs agreed to forfeit $250,000.00.

**7.** Plaintiffs' Complaint is vague at best with respect to any asserted claims under the Right to Financial Privacy Act. However, based on information obtained at the Initial Scheduling Conference and subsequently, the Court understands Plaintiffs' claim under the RFPA to be based on allegations that Morales filed, in bad faith, a Criminal Referral Form with the Federal Bureau of Investigations and the Internal Revenue Service which stated a suspicion that Martinez was structuring transactions in an effort to avoid having to file any Currency Transaction Reports. It was this Criminal Referral Form that led to the criminal investigation and charges being filed

against Plaintiffs and the civil forfeiture action being levied against Plaintiffs' properties. As damages, Plaintiffs are seeking: (1) the amount of legal fees incurred in defending the criminal and forfeiture cases; (2) lost profits from being unable to conduct business during the investigation and criminal procedure; (3) the amount of the stipulation in the forfeiture action, or $250,-000.00; and (4) loss of goodwill in the amount of $3,100,000.00. Even if the Court believed that Defendants were not immune under the provisions of the RFPA, the Court would likely hold that no causal connection could be found between Morales action, in submitting the Criminal Referral Form, and the damages stemming from the government's investigation and subsequent legal actions against Plaintiff. The decision to institute those actions lies with the government, not Morales or Banco Santander.

**8.** The Act also states that its provisions do not permit "the withholding of financial records or information required to be reported in accordance with any Federal statute or rule promulgated thereunder." 12 U.S.C. § 3413(d).

U.S.C. § 5324(a), which prohibits structuring. Therefore, Banco Santander's voluntary dissemination of the information to pertinent law enforcement agencies cannot serve as the basis for liability under the RFPA.[9]

### D. Breach of Contract Claim

At its heart, Plaintiffs' Complaint is premised upon allegations that Banco Santander violated an implied contractual obligation to obey the law. Plaintiffs assert that Defendants failed to file Currency Transaction Reports as mandated by the Bank Secrecy Act, 31 U.S.C. § 5313(a), and then, in order to cover their violation of the Bank Secrecy Act, they filed a Criminal Referral Form in violation of the RFPA. This, Plaintiffs assert, violated a tacit agreement incorporated into the contractual relationship between Martinez and the bank that the bank would not violate the banking laws.

Plaintiffs' argument fails. First, Plaintiffs have pointed to no basis for implying a duty *to the customer* on the part of the bank to file Currency Transaction Reports under the Bank Secrecy Act. Congress never intended the customer to be a beneficiary of the reporting requirements of the Bank Secrecy Act, and the Court holds that bank customers have no implied contractual right to have their banks file Currency Transaction Reports. More importantly, Plaintiffs have not demonstrated any injury arising from Banco Santander's alleged failure to comply with those reporting requirements. Instead, Plaintiffs actually argue that Banco Santander's failure to file the Currency Transaction Reports, because it was a violation of federal law, prompted Banco Santander to file a Criminal Referral Form which in turn fomented the criminal investigation into Plaintiffs' affairs. In reality, then, Plaintiffs'

grievance is not that Defendants violated the Bank Secrecy Act's reporting rules, but that Defendants filed the Criminal Referral Form. But banks have no duty to their customers, contractual or otherwise, "to refrain from reporting suspected illegal activity" by their customers. *Waye v. Commonwealth Bank,* 846 F.Supp. 321, 325 (M.D.Pa.1994). Moreover, it matters not that the bank or its employees acted with malice or in bad faith; so long as they suspected illegal activity. Plaintiffs have never contended that the information in the Criminal Referral Form was false, or even that they were innocent of engaging in "structured" transactions. But even that does not matter, because, under Plaintiffs' own argument, the RFPA provides bank customers with the full extent of protection regarding a bank's divulging of financial information—i.e., the "implied agreement" that Plaintiffs attempt to invoke would only require the bank to comply with the law. And as the Court has already determined that Defendants are shielded from liability under the RFPA, 12 U.S.C. § 3403(c), Plaintiffs cannot claim Defendants violated any implicit contractual obligation.

## III. CONCLUSION

Based on the above analysis, the Court holds (1) the Plaintiffs' claims for defamation and libel are time-barred; (2) that no private cause of action exists under the Bank Secrecy Act; (3) that Defendants are protected from liability under the Right to Financial Privacy Act; and (4) that Defendants had no contractual obligation to Plaintiffs either to submit Currency Transaction Reports or to refrain from reporting suspected illegal conduct on the Plaintiffs' part. For these rea-

---

9. The Court realizes that it has considered the contents of the Criminal Referral Form, a document outside of the pleadings. But as the United States Court of Appeals for the First Circuit has recently reiterated, a district court may consider such documents on a motion to dismiss where the allegations, by the plaintiffs own admission, rest on that document. *Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 19–21 (1998). Here, Plaintiffs have admitted that the Criminal Referral Form is the basis for their Right to Financial Privacy Act claim, and no one has questioned the authenticity of the document.

Therefore, the Court feels comfortable addressing the document even though it was not made part of the pleadings. *Id.* But even if the Court were to convert Defendants' motion to one for summary judgment, the factual inquiry would be limited to the substance of the Criminal Referral Form, the contents and authenticity of which are not disputed. And the Court has looked at the evidence most favorably to Plaintiffs, but has nonetheless concluded that no reasonable jury could determine that the information was not clearly relevant to a possible violation of 31 U.S.C. § 5324(a), which prohibits structuring.

sons, the Court hereby **DISMISSES** Plaintiffs' Complaint **WITH PREJUDICE.**

**SO ORDERED.**