#24529-rev & rem-SLZ

**2008 SD 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DOROTHY TIEDE,                                    Plaintiff and Appellant,

    v.

CORTRUST BANK, N.A.,                             Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE EUGENE E. DOBBERPUHL
Judge (Retired)

* * * *

RON J. VOLESKY of
Volesky Law Firm                                 Attorney for plaintiff
Huron, South Dakota                              and appellant.

MICHAEL A. HENDERSON of
Cadwell, Sanford, Deibert & Garry
Sioux Falls, South Dakota

DEANNE WATTS HAY
CARRIE ANN GOHN BARNEY of
Parker & Hay, LLP                                Attorneys for defendant
Topeka, Kansas                                   and appellee.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 7, 2008

OPINION FILED **04/16/08**

#24529

ZINTER, Justice

[¶1.]	Dorothy Tiede brought this retaliatory discharge action against CorTrust Bank, alleging that she was discharged for filing Suspicious Activity Reports (SARs) and Currency Transaction Reports (CTRs) after senior bank officials told her not to file them.  The reports were allegedly required under the Bank Secrecy Act (BSA), 31 USC § 5311 (2001).  CorTrust moved for judgment on the pleadings asserting: that Tiede's state law claim, arising under the public policy exception to the at-will employment doctrine, was preempted by the National Bank Act (NBA), 12 USC § 24 (Fifth); and, that her action violated policies underlying the BSA.  The circuit court granted CorTrust's motion on the ground of preemption and dismissed.  We reverse and remand.

## I.

[¶2.]	CorTrust is a national bank organized under the law of the United States, with its principal place of business in Mitchell, South Dakota.  Tiede had been employed with CorTrust for twenty-six years.  At the time of her termination, Tiede was employed as an assistant cashier, assistant vice president, and bank secrecy officer.

[¶3.]	Tiede's duties included overseeing compliance with the BSA, which required the filing of SARs and CTRs with the Internal Revenue Service.  According to Tiede, she was told on several occasions by senior bank officials to disregard filing SARs and CTRs with respect to certain CorTrust customers.  Notwithstanding these admonitions, Tiede continued to file the reports.

[¶4.] CorTrust terminated Tiede on February 2, 2005. Tiede then brought this retaliatory discharge suit, alleging that she was terminated in retaliation for filing the SARs and CTRs. She specifically contended that her failure to file the reports would have violated federal banking law and constituted a felony under the BSA. Therefore, she alleged that she was wrongfully discharged under South Dakota's public policy exception to the at-will employment doctrine.

[¶5.] CorTrust moved for a judgment on the pleadings. In connection with its motion, CorTrust filed an affidavit of CorTrust's chief financial officer. Tiede submitted a responsive affidavit. The circuit court granted CorTrust's motion, concluding that Tiede's claim was preempted by the NBA.

## II.

[¶6.] Procedurally, although this matter was initiated as a motion to dismiss, both parties submitted matters outside the pleadings, neither side objected, and the circuit court did not exclude them. Because evidence outside the pleadings was considered without objection, "we review the [circuit] court's ruling as a motion for summary judgment." Flandreau Pub. Sch. Dist. No. 50-3 v. G.A. Johnson Const. Inc., 2005 SD 87, ¶6, 701 NW2d 430, 434 (citing Tibke v. McDougall, 479 NW2d 898, 903-04 (SD 1992) (providing that when the record indicates that matters outside of the pleadings were considered by the court, motions to dismiss are reviewed and disposed of as motions for summary judgment)). "Because we review this matter as a summary judgment, we 'restrict our review to determining whether the record before us discloses any genuine issues of material fact and, if not, whether the . . . court committed any errors of law.'" Id. ¶7 (citation omitted).

Because this case ultimately involves questions of law and statutory interpretation, we review the circuit court's interpretation de novo. *See* State v. Burdick, 2006 SD 23, ¶6, 712 NW2d 5, 7.

### III.

[¶7.] Tiede alleges that she was discharged in retaliation for her refusal to discontinue filing SARs and CTRs on certain CorTrust customers. She contends that as the bank secrecy officer, she was required to file these reports or risk criminal prosecution under the BSA. CorTrust responds that Tiede's discharge claim is preempted because it conflicts with federal law granting national banks the power to discharge its officers at-will. CorTrust relies on a provision of the NBA that gives a nationally chartered bank the power:

> [T]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, . . . [and] *dismiss such officers or any of them at pleasure*, and appoint others to fill their places.

12 USC § 24 (Fifth) (emphasis added). CorTrust contends that this language clearly expresses Congress's intent that the hiring and firing decision of national bank officers is vested in the bank board of directors, who have the power to dismiss the bank officers "at pleasure." Therefore, CorTrust maintains that Tiede's state retaliatory discharge claim conflicts with federal law and is preempted by the Supremacy Clause of the United States Constitution.

[¶8.] This Court has previously recognized federal banking preemption in a wrongful termination claim brought by a bank officer. In *Weber v. First Fed. Bank*, 523 NW2d 720 (SD 1994), the plaintiff was discharged from his position as chief executive officer and president of a federally chartered savings bank. He sued for

wrongful termination and the circuit court entered judgment for the bank, holding that analogous federal regulations on bank employment relations (implementing the Home Owners' Loan Act of 1933) preempted South Dakota state law claims for wrongful termination. This Court affirmed, recognizing the nature of employment relations under federal banking laws:

> Federal mutual savings banks are required to "operate under bylaws that contain provisions that comply with all requirements specified by the [Office of Thrift Supervision.]" 12 C.F.R. § 544.5(a). Certain regulations list the powers of the board of directors of an association, including the power to fix the compensation of officers and employees, remove any officer or employee at any time with or without cause, and enter into and terminate employment contracts. 12 C.F.R. §§ 544.5(b)(11)(ii), 563.39(a)-(b).

*Id.* at 721. We concluded that this analogous language preempted the plaintiff's wrongful termination claim. *Id.* at 722.

[¶9.]     Tiede, however, argues that *Weber* is distinguishable because *Weber* involved a claim for wrongful termination, which is an employment claim in contract. Tiede contends that her retaliatory discharge action is not a claim arising out of contractual employment rights, but is a tort claim arising out of public policy.[1] CorTrust responds that South Dakota does not distinguish between retaliatory discharge in tort and wrongful termination in contract. CorTrust relies on *Johnson v. Kreiser's, Inc.*, 433 NW2d 225, 227 (SD 1988), as support for this proposition.

---

1.   Tiede also argues that *Weber* does not apply because that claim was against a federal mutual savings bank, not a national bank. That distinction is without merit. Both situations involve employee relations under federal banking law.

[¶10.]     In *Johnson*, this Court adopted a public policy exception to the employment at-will doctrine. A wrongful termination claim was permitted to the extent that the employee's discharge violated a mandated public policy, specifically those that involve criminal or unlawful acts. *Id.* at 227; *see also* Peterson v. Glory House of Sioux Falls*, 443 NW2d 653 (SD 1989) (acknowledging the public policy exception, but declining to expand its parameters). In order to bring a cause of action for wrongful termination under South Dakota's public policy exception, "the employee has the burden of proving that the dismissal violates the clear mandate of public policy." *Id.*

[¶11.]     In adopting this exception to the at-will employment doctrine, this Court recognized "that an employer becomes subject to *tort liability* if its discharge of an employee contravenes some well established public policy." *Id.* (emphasis added). Inconsistently, however, this Court also stated that a *contract action* for wrongful discharge was the "more appropriate" remedy:

> An employee has a cause of action for wrongful discharge when the employer discharges him in retaliation for his refusal to commit a criminal or unlawful act. It is repugnant to public policy to expect an employee to commit such acts in order to save his job. Consequently, we carve out this exception to the at-will doctrine[.] In doing so, we conclude that a *contract action for wrongful discharge is more appropriate than a tort action.* A contract action is predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform a criminal or unlawful act.

*Id.* at 227 (emphasis added).

[¶12.]     This Court later considered another discharge claim in *Niesent v. Homestake Mining Co. of Cal.*, 505 NW2d 781 (SD 1993). In *Niesent*, an employee was discharged after filing a workers' compensation claim. He commenced an

action against his former employer claiming: (1) that the discharge violated an employment agreement; and (2) that the discharge was wrongful retaliation for filing a workers' compensation claim under the public policy exception to the employment at-will doctrine. *Id.* at 782. Summary judgment was entered in favor of the employer on both causes of action. This Court affirmed dismissal of the first claim involving termination under the employment agreement (a contract claim), but reversed and remanded on the wrongful discharge claim involving retaliation for a violation of public policy. In disposing of the causes of action differently, this Court implicitly recognized a distinction between a contractual "wrongful termination" and the public policy tort of retaliatory discharge. This Court did so by affirming dismissal of the wrongful termination claim (involving breach of contract) because the collective bargaining agreement made the probationary employee's employment at-will, while allowing the wrongful discharge (involving retaliation for filing a workers' compensation claim) to survive under the public policy exception. *Id.* Concededly, however, this Court referred to the causes of action interchangeably without expressly stating any distinction.

[¶13.]     Although the majority in *Niesent* did not specifically recognize any distinction between contractual and tortious claims, Chief Justice Miller did. He specifically noted that South Dakota had adopted the tort theory of retaliatory discharge, stating "[o]ur recognition of the *tort of retaliatory discharge* should be based directly on the South Dakota Legislature's stated public policy as set forth in this statute." *Id.* at 785 (Miller, C.J., concurring in result) (emphasis added).

[¶14.] Later, in *Finck v. City of Tea*, 443 NW2d 632 (SD 1989), an employee brought claims for wrongful termination, breach of contract, and retaliatory discharge. In resolving a notice of tort claim issue, this Court concluded that notice was required for the retaliatory discharge claim because a claim of "retaliatory discharge sound[s] in tort." *Id.* at 635. On the other hand, this Court concluded that the tort claim statute did not require notice of the contract-based claims. *Id.*

[¶15.] Therefore, our most recent decisions have confirmed that our public policy cause of action for retaliatory discharge sounds in tort. Although retaliatory discharge is concededly an exception to the employment at-will doctrine, the latter concept being rooted in contract, retaliatory discharge is a tort arising from a breach of public policy duties independent of the employment contract. Because the retaliatory discharge tort is independent of the contractual employment relationship, Tiede's claim falls outside the employment related claim that we found preempted in *Weber*, 523 NW2d at 721-22.

[¶16.] CorTrust, however, correctly argues that the NBA may preempt conflicting state law employment claims regardless of any distinction between claims based in tort and contract. Conflict preemption in this area of national banking recognizes that both enumerated and incidental powers of national banks under federal law ordinarily preempt contrary state law. Barnett Bank of Marion County, N.A., v. Nelson, 517 US 25, 32, 116 SCt 1103, 1108, 134 LEd2d 237 (1996). The conflict test is whether compliance with both laws is a "physical impossibility," or, whether the state law "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 31, 116 SCt at

1108 (citations omitted). The state law does not, however, stand as an obstacle to the accomplishment of a federal statute's purpose if that purpose has been "limited." *Id.*

[¶17.] To determine whether the NBA has been sufficiently limited by the BSA to avoid conflict preemption in this case, we note that notwithstanding the employment relation powers given under the NBA, the subsequently enacted BSA requires banks and their officers to file SARs and CTRs:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction[.]

31 USC § 5313(a). The purpose of this Act is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 USC § 5311(a). "A person willfully violating [the Act]. . . shall be fined not more than $250,000, or imprisoned for not more than five years, or both." 31 USC 5322(a).

[¶18.] Clearly, these provisions apply to national banks and their officers. Because banks can only act through their officers, and because individual officers are subject to criminal prosecution for willful violations, banks are certainly not free to require their officers to fail to comply with the BSA. Therefore, the BSA limits officer employment relations in national banks to the extent necessary to comply with the BSA. The question then is whether a state law claim for retaliatory

discharge arising from the public policy requiring compliance with the BSA's reporting requirements constitutes an obstacle to the accomplishment and execution of the purposes and objectives of the NBA, 12 USC § 24 (Fifth), as limited by the BSA.

[¶19.] The almost identical question was raised in *Booth v. Old Nat'l Bank*, 900 FSupp 836 (ND WVa 1995). In *Booth*, the president of a bank encouraged the plaintiff to execute a transfer of funds. The plaintiff resisted, advising the bank that the transfer would violate a United States Comptroller of the Currency Regulation. Regardless, the president of the bank ordered the plaintiff to make the transfer. Following an annual compliance audit, a federal bank auditor determined that the transfer was a violation of the regulation. The auditor directed the plaintiff, as the responsible party, to comply with the regulation by redepositing the funds. The plaintiff complied. Eventually, the bank forced plaintiff to resign.

[¶20.] Plaintiff sued, alleging two causes of action: retaliatory discharge and breach of contract. The *Booth* court discussed preemption under the NBA. There was little dispute that the breach of contract action was preempted by the NBA. *Booth*, however, concluded that the plaintiff's claim for retaliatory discharge was not preempted. *Id*. at 843. *Booth* relied on *Sargent v. Central Nat'l Bank & Trust Co. of Enid, Oklahoma*, 809 P2d 1298 (Okla 1991), in which a bank auditor brought a suit alleging that the bank discharged him for refusing to violate a public policy of the State of Oklahoma. In addressing whether the NBA preempted that suit, the *Sargent* court held that "preemption does not shield the defendant bank from tort

liability[2] for dismissing an employee in violation of a state public policy which is consistent with the federal statute's purpose." *Id.* at 1299. The Oklahoma court noted that while the NBA bestowed upon banks the right to discharge officers at pleasure, "we view this right as not without a limit. When . . . the public policies whose violation gives rise to a [retaliatory discharge] claim parallels that of a federal law which is sought to be invoked as a shield from liability, preemption is not available as a defense." *Id.* at 1302. In referring to this language from *Sargent, Booth* concluded:

> This Court agrees with the rationale in *Sargent* that preemption does not shield a defendant bank from tort liability for retaliatory discharge when the state's public policy is consistent with the federal statute's purpose. As the *Sargent* court noted, [the NBA] gave banks the right to discharge officers and directors at pleasure. This right, however, is tempered by restrictions based on state law which are consistent with federal policy.

*Booth*, 900 FSupp at 843. Ultimately, *Booth* and *Sargent* observed that the banks' employment powers under the NBA had been limited by other federal statutes. In light of that limitation, *Booth* concluded that it could find no conflict between any federal statute and the state law concerning retaliatory discharge. *Booth* held that while the NBA preempts a breach of contract claim, it does not preempt all claims, including retaliatory discharge. *Id. See also* Kroske v. U.S. Bank Corp., 432 F3d 976, 986-87 (9thCir 2005) (concluding that a state cause of action consistent with federal statutes is not preempted because federally chartered banks are not exempt

---

2.  Similar to South Dakota, Oklahoma's claim for retaliatory discharge was a "tortious discharge in violation of [the] state's public policy." *Sargent*, 809 P2d at 1300.

from liability under the other federal laws); Peatros v. Bank of America NT & SA, 91 CalRptr2d 659, 674, 22 Cal4th 147, 173, 990 P2d 539, 552 (Cal 2000) (concluding no conflict preemption existed to the extent that a state law cause of action was consistent with federal employment statutes because the NBA is "impliedly amended" by subsequently enacted federal statutes governing employment relations).

[¶21.] Because Tiede's state claim is consistent with federal banking laws requiring the filing of SAR and CTR reports, and because the state claim is premised on the allegation that the senior bank officials retaliated for her compliance with those federal banking laws, we see no conflict between the retaliatory discharge claim and the purpose of 12 USC § 24 (Fifth) as limited by the BSA. Therefore, we conclude that the retaliatory discharge claim is not conflict preempted.[3]

---

3.    CorTrust also relies on *Blote v. First Fed. Sav. and Loan Ass'n of Rapid City*, 422 NW2d 834 (SD 1988), in which this Court cited *Inglis v. Feinerman,* 701 F2d 97 (9thCir 1983), which affirmed dismissal of a retaliatory discharge claim alleging that the real reason for the termination was the employee's insistence that the bank conform its practices to federal law. In dismissing a bank vice president's wrongful discharge claim, the *Blote* Court cited *Inglis.* We did so, however, only for *Inglis'* alternative holding "that attempts to create employment rights from independent sources *such as personnel manuals* are void under the Federal Home Loan Bank Act (12 USC § 1421, *et seq.*)," which authorizes dismissal of bank officers "at pleasure" of the bank (12 USC § 1432(a)). *Blote,* 422 NW2d at 838 (emphasis added). We did not consider whether preemption applied to a public policy retaliatory discharge claim that was consistent with other federal banking statutes.

[¶22.]     CorTrust alternatively argues that Tiede's claim fails because it is not consistent with express policies of the BSA.  CorTrust first contends that it is immune from all claims arising under the BSA, 31 USC § 5318(g)(3).  That provision provides immunity for a financial institution's "*disclosure* or for failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure." *Id.*  (emphasis added).   Although this language provides immunity for *disclosure* of the reports, it does not purport to provide immunity for a financial institution that orders a bank officer *to not make the disclosure* required by the BSA.  This is evident from CorTrust's supporting authorities,[4] which involve suits based on the *filing* of disclosure reports, as opposed to a bank's attempts to prohibit its officers from filing the reports.

[¶23.]     CorTrust also contends there is no private cause of action permitted under the BSA, citing *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 FSupp2d 1316 (DKan 2006), *Martinez Colon v. Santander Nat'l Bank*, 4 FSupp2d 53 (DPuerto Rico 1998), and *Baker v. Wilmington Trust Co.*, 320 FSupp2d 196 (DDel 2004).  Those cases are inapposite because they did not involve a former employee suing an employer for state law retaliatory discharge as a result of the employee's conduct, which was allegedly required by the BSA.  Rather, those cases involved either: (1) employees who were terminated for violating the BSA; or (2) employees and

---

4.     *See In re* Davis, 244 B.R. 776, 791 (Bankr NDIll 2000) (concluding a credit union had immunity from liability for any disclosures contained in the filed SARs); Nieman v. Firstar Bank, 2005 WL 2346998, *4 (NDIowa 2005); Gregory v. Bank One Corp. Inc., 200 FSupp2d 1000, 1002 (SDInd 2002) (involving immunity for statements made in a suspicious activity report).

customers who sued because SARs were filed against them. Tiede's suit does not involve such acts or omissions. Her claim is for the state law tort of retaliatory discharge, and she alleges a breach of the public policy duty to refrain from retaliating against employees for compliance with federal banking laws involving criminal sanctions.

[¶24.] CorTrust's remaining contentions involve obstacles to proof at trial[5] and other matters that should be first addressed by the circuit court. We conclude that the circuit court erred in holding that Tiede's claim of retaliatory discharge was preempted by the NBA.

[¶25.] Reversed and remanded.

[¶26.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

---

5. For example, CorTrust argues that even if the action was permitted to proceed, Tiede cannot prove her claim because evidence regarding SARs are confidential and may not be disclosed under 12 CFR §21.11(k). Although that regulation prohibits the disclosure of SARs or the information contained in a SAR, the regulation does not prohibit suits or alternative methods of proving that an employee was discharged in retaliation for attempting to comply with the BSA. The regulation only poses an obstacle to Tiede's method of proof, something that she must overcome in the proceedings in circuit court. Similarly, should CorTrust establish that its defense requires disclosure in violation of the regulation, that matter must be addressed in the first instance by the circuit court.