
DA 07-0439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 267

DANIEL FENNO,

      Plaintiff and Appellant,

  v.

MOUNTAIN WEST BANK,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 2007-87
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Michael J. San Souci, Attorney at Law, Bozeman, Montana

      For Appellee:

      Frederick F. Sherwood, Reynolds, Motl & Sherwood, Helena, Montana

Submitted on Briefs:  May 21, 2008

Decided:  August 4, 2008

Filed:

_____
              Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Daniel Fenno (Fenno) appeals from an order of the First Judicial District Court, Lewis and Clark County, granting Mountain West Bank's (Mountain West) motion for summary judgment. We reverse and remand.

¶2    Fenno presents the following issues for review:

¶3    Whether the District Court properly concluded that federal law preempted Fenno's state wrongful discharge claim.

¶4    Whether the District Court properly determined that Fenno qualified as a bank officer for purposes of the National Banking Act's (the National Act) "at pleasure" provision.

### PROCEDURAL AND FACTUAL BACKGROUND

¶5    Mountain West is a nationally chartered bank. Mountain West employed Fenno as an internal audit officer responsible for reviewing policies and procedures. Fenno also served as secretary of two Mountain West Bank branch's boards of directors. Fenno discovered what he believed to be a potential irregularity in a Mountain West loan transaction in June 2005. Fenno believed that the irregular loan transaction may have involved misconduct by a Mountain West executive.

¶6    Fenno reported the irregularity to Mountain West management. Fenno also informed Mountain West management that he intended to report the irregularity to the bank's audit committee. Fenno reported the irregularity to the audit committee and the bank's executive committee. Fenno alleged that his reporting of the irregularity prompted Mountain West to begin stripping Fenno of his duties and responsibilities. Mountain West removed Fenno

2

from the two boards of directors and reduced his salary. Mountain West suspended Fenno completely in August 2006. Mountain West finally terminated Fenno in September 2006.

¶7 Fenno sued Mountain West under the Montana Wrongful Discharge from Employment Act (WDEA). Sections 39-2-901, et seq., MCA. Fenno alleged that Mountain West had discharged him in retaliation for Fenno's having reported a potential violation of public policy. Fenno sought both actual and punitive damages. Mountain West moved to dismiss, or, in the alternative, for summary judgment, on the grounds that federal law preempted Fenno's claim under the WDEA. Mountain West argued that Fenno's claim fell under the National Act's "at pleasure" provision. 12 U.S.C. § 24 (Fifth). This provision permits national banks to dismiss bank officers at their pleasure. 12 U.S.C. § 24 (Fifth).

¶8 The District Court considered both the "at pleasure" clause and 12 U.S.C. § 1831j(a)(1). Section 1831j(a)(1) protects national bank employees from discrimination in retaliation for reporting possible bank misconduct to any federal banking agency or to the U.S. Attorney General. The District Court analyzed these two statutes in conjunction with the WDEA. The court determined that the more specific federal statutes conflicted with the WDEA's more general prohibition on termination in retaliation for an employee's reporting of a violation of public policy. This perceived conflict led the District Court to conclude that the federal statutes preempted the WDEA and granted summary judgment to Mountain West. Fenno appeals.

**STANDARD OF REVIEW**

3

¶9     We review de novo a district court's decision to grant summary judgment. *Prosser v. Kennedy Enterprises, Inc.*, 2008 MT 87, ¶ 10, 342 Mont. 209, ¶ 10, 179 P.3d 1178, ¶ 10. We use the same criteria applied by the district court under M. R. Civ. P. 56. *Prosser*, ¶ 10. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable inferences in favor of the party opposing summary judgment. *Prosser*, ¶ 10.

## DISCUSSION

¶10    *Whether the District Court properly concluded that federal law preempted Fenno's state wrongful discharge claim.*

¶11    This Court recognizes three ways in which federal law may preempt state law. *Vitullo v. International Broth. of Elec.*, 2003 MT 219, ¶ 14, 317 Mont. 142, ¶ 14, 75 P.3d 1250, ¶ 14. Congress may include a preemption clause in the federal statute that provides expressly that state law will not apply in the area governed by the federal statute. *Vitullo*, ¶ 14; *Favel v. American Renovation and Const. Co.*, 2002 MT 266, ¶ 40, 312 Mont. 285, ¶ 40, 59 P.3d 412, ¶ 40. Federal law may supersede state law when the state law actually conflicts with the federal law. This "conflict preemption" occurs either when one cannot comply with both state and federal law, or when "'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Favel*, ¶ 40 (quoting

4

*Hillsborough County v. Automated Medical Labs*, 471 U.S. 707, 713, 105 S. Ct. 2371, 2375 (1985)). Congress also may imply its intent to preempt state law in a particular area where the regulation of the area is so comprehensive that it is reasonable to conclude that Congress intended to "occupy the field" and to leave no room for supplementary state regulation. *Vitullo*, ¶ 14; *Favel*, ¶ 40.

¶12 This Court starts with the presumption that the historic powers of the states "were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Vitullo*, ¶ 15; *Favel*, ¶ 39 (both quoting *Sleath v. West Mont Home Health Services*, 2000 MT 381, ¶ 23, 304 Mont. 1, ¶ 23, 16 P.3d 1042, ¶ 23). A party will overcome the presumption against preemption only by "evidence of a clear and manifest intent of Congress to preempt state law." *Favel*, ¶ 39 (internal citations and quotation marks omitted). National banks, such as Mountain West, remain generally subject to state laws, "unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions." *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 248, 34 S. Ct. 599, 607 (1944).

¶13 The District Court analogized from decisions of the Ninth Circuit Court of Appeals to reach its conclusion that the federal statutes preempted Fenno's WDEA claim. These federal cases previously had interpreted state law in relation to the National Act's "at pleasure" provision and whistleblower provision. We first analyze these federal decisions to determine their applicability to Fenno's WDEA claim.

¶14    The District Court relied particularly on *Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005, *cert. denied*, 127 S. Ct. 157 (2006)).  The Ninth Circuit considered whether the National Act's "at pleasure" provision preempted the plaintiff's state age discrimination claim.  *Kroske*, 432 F.3d at 980.  The court determined that the National Act's "at pleasure" provision impliedly had been repealed to the extent necessary to effectuate the Age Discrimination in Employment Act (ADEA).  *Kroske*, 432 F.3d at 987.  The court applied the general conflict preemption rule to establish that the federal statutes did not conflict with the state age discrimination statute.  *Kroske*, 432 F.3d at 987-89.  The court relied upon the fact that the state statute "mirrors the substantive provisions of the ADEA and is interpreted consistently with the ADEA."  *Kroske*, 432 F.3d at 987.

¶15    The District Court also relied upon the Ninth Circuit's decision in *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520 (9th Cir. 1989).  There a state bank officer alleged wrongful discharge pursuant both to his employment contract and to state tort law.   The bank fired the officer after he had been accused of sexual harassment.  *Mackey*, 867 F.2d at 522.  The court determined that the National Act's "at pleasure" provision preempted the contract claim as a matter of law.  *Mackey*, 867 F.2d at 525.  The court considered whether the National Act also preempted the officer's state law tort claim.  *Mackey*, 867 F. 2d at 525-26.  The court cited its general disapproval of substituting tort for contract claims.  *Mackey*, 861 F.2d at 526.  The court further reasoned that "[t]he purpose of the provision in the [National Act] was to give those institutions the greatest latitude possible to hire and fire their chief

6

operating officers, in order to maintain the public trust." *Mackey*, 867 F.2d at 526.

¶16 The District Court distinguished *Kroske* on the basis that the WDEA's retaliatory discharge provision did not mirror the substantive provisions of the federal whistleblower statute. The District Court further noted that the federal statute identifies specific employee actions for which a bank may not carry out a retaliatory discharge – reporting information regarding a possible violation of federal law or regulation, or bank mismanagement. 12 U.S.C. § 1831j(a)(1). The District Court pointed out that the WDEA, by contrast, prohibits termination generally if "it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy." Section 39-2-904(1)(a), MCA. Thus, the District Court interpreted the federal statutes as affording Mountain West great latitude to fire its officers similar to the latitude afforded by the court in *Mackey*.

¶17 The District Court concluded that federal law protects employees who report violations to a federal agency or the U.S. Attorney General specifically, where the WDEA does not identify to whom the employee must report violations in order to qualify for protection. Section 39-2-904(1)(a), MCA. The District Court did not provide, however, any further analysis of the existence of conflict preemption in the operation of the state and federal statutes at issue. The District Court did not demonstrate explicitly that "'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Favel*, ¶ 40 (quoting *Hillsborough County*, 471 U.S. at 713, 105 S. Ct. at 2375).

7

¶18    Fenno distinguishes *Kroske* and *Mackey* on the basis that the decisions discuss age discrimination and general wrongful discharge, respectively. Fenno contends that *Booth v. Old Nat. Bank*, 900 F.Supp. 836 (N.D. W. Va. 1995), and *Sargent v. Central Nat. Bank & Trust Co.*, 809 P.2d 1298, (Okla. 1991), represent more closely analogous and better reasoned federal decisions that consider more directly whether the National Act preempts state wrongful discharge laws. *Booth* and *Sargent* analyzed whether the National Act preempts state law in the context of a bank officer's allegation that he had been discharged in retaliation for his refusal to violate a federal law or regulation. *Booth*, 900 F.Supp. at 840; *Sargent*, 809 P.2d at 1300-01.

¶19    *Sargent* explained the "at pleasure" provision's policy goals as being rooted in the ability to "hire and fire at will . . . for the sake of the institution's financial integrity." *Sargent*, 809 P.2d at 1302 (citing *Armano v. Federal Reserve Bank of Boston*, 468 F.Supp. 674, 676 (D.Mass. 1979)) (emphasis omitted). *Sargent* reasoned that this right is "not without a limit," however, when "the public policy whose violation gives rise to [the retaliatory discharge] claim parallels that of the federal law which is sought to be invoked as a shield from liability. . . ." *Sargent*, 809 P.2d at 1302 (emphasis omitted). The court determined that "pre-emption does not shield the defendant-bank from tort liability for dismissing an employee in violation of a state public policy which is consistent with the federal statute's purpose." *Sargent*, 809 P.2d at 1300 (emphasis omitted).

¶20    The *Booth* court agreed. *Booth*, 900 F.Supp. at 843 (adopting *Sargent's* language

8

regarding state public polices that are "consistent with the federal statute's purpose" (*Sargent*, 809 P.2d at 1300)). The court in *Booth* noted that the National Act's "at pleasure" provision has been construed generally to preempt state law governing employment relations, particularly with regard to contract claims. *Booth*, 900 F.Supp. at 841. The court cautioned, however, that "this preemption does not amount to complete preemption" as the U.S. Supreme Court has applied complete preemption only in specific, limited areas. *Booth*, 900 F.Supp. at 841 (citing *Watson v. First Union Nat. Bank of South Carolina*, 837 F.Supp. 146 (D. S.C. 1993)). The court distinguished *Mackey* on the grounds that cases finding preemption in the tort context had not addressed generally the issue of retaliatory discharge. *Booth*, 900 F.Supp. at 842.

¶21    The court then analyzed whether the National Act preempted state retaliatory discharge protection in the context of the competing policy interests at stake between the federal and state laws. *Booth*, 900 F.Supp. at 841. *Booth* looked to whether a conflict existed between the policy underlying the National Act and the policy underlying the state retaliatory discharge law. *Booth*, 900 F.Supp. at 842-43. The court found no policy conflict, and, thus, concluded that 12 U.S.C. § 24 (Fifth), does not preempt a state retaliatory discharge claim. *Booth*, 900 F.Supp. at 843.

¶22    The South Dakota Supreme Court recently adopted *Sargent's* and *Booth's* conflict preemption analysis. *Tiede v. CorTrust Bank, N.A.*, 748 N.W.2d 748 (S.D. 2008). The court considered whether an employee could bring a state retaliatory discharge suit against a

9

national bank covered by 12 U.S.C. § 24 (Fifth). *Tiede*, 748 N.W.2d at 750. The bank had fired the employee after she had filed several federally required reports over the bank's objections. The statutes that require banks to file these reports provide criminal penalties for failure to accomplish the filing. *Tiede*, 748 N.W.2d at 750. South Dakota common law, like Montana's WDEA, allows employees to bring a wrongful termination claim for retaliatory discharge where the employee's discharge violated a public policy. *Tiede*, 748 N.W.2d at 751. South Dakota specifically recognizes a violation of public policy when the employer has committed a criminal or unlawful act. *Tiede*, 748 N.W.2d at 751.

¶23 The court applied the policy-based preemption test from *Sargent* and *Booth* in conjunction with its own state conflict preemption test. This test mirrors Montana's – whether the law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Tiede*, 748 N.W.2d at 752 (quoting *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32, 116 S. Ct. 1103, 1108 (1996)); *see also Favel*, ¶ 40. The court determined that Congress had intended the federal statutes that required the employee to file the reports at issue to aid federal criminal investigations. *Tiede*, 748 N.W.2d at 753 (citing The Bank Secrecy Act, 31 U.S.C. § 5313(a) and 31 U.S.C. § 5322(a)). The court noted that the state retaliatory discharge law likewise prevented employers from violating public policy, particularly with regard to criminal or unlawful acts. *Tiede*, 748 N.W.2d at 751, 754.

¶24 The court balanced the body of federal law against state law and concluded that the

"at pleasure" provision of 12 U.S.C § 24 (Fifth) did not preempt the state retaliatory discharge claim. The court agreed that the federal banking laws' purpose of addressing potential criminal interference in banking conformed with the state retaliatory discharge law's purpose of preventing employers from violating public policy. *Tiede*, 748 N.W.2d at 754-55. As a result, the state law did not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Tiede*, 748 N.W.2d at 753, 754-55; *Barnett Bank*, 517 U.S. at 32, 116 S. Ct. at 1108; *see also Favel*, ¶ 40.

¶25    We agree with South Dakota's preemption analysis. South Dakota applied conflict preemption instead of field preemption. The U.S. Supreme Court has applied complete preemption only in specific areas. *Booth*, 900 F.Supp. at 841 (citing *Watson*, 837 F.Supp. 146). The National Act has not preempted completely state law governing employment relations. Montana's preemption analysis dictates that conflict preemption occurs either when one cannot comply with both state and federal law, or when the "'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Favel*, ¶ 40 (quoting *Hillsborough County*, 471 U.S. at 713, 105 S. Ct. at 2375).

¶26    Preemption cannot "shield [a] defendant bank from tort liability for dismissing an employee in violation of a state public policy which is consistent with the federal statute's purpose." *Tiede*, 748 N.W.2d at 754; *Booth*, 900 F.Supp. at 842; *Sargent*, 809 P.2d at 1302. A bank cannot avail itself of the National Act's "at pleasure" provision unless one cannot comply with both state and federal law, or if the state law "stands as an obstacle to the

11

accomplishment and execution of the full purposes and objectives of Congress." *Favel*, ¶ 40 (quoting *Hillsborough County*, 471 U.S. at 713, 105 S. Ct. at 2375).

¶27 We too analyze first the policies underlying the federal statutes at issue. The federal courts have determined that Congress intended the "at pleasure" provision to "ensure the financial stability of the banking institutions by affording them the means to discharge employees who were felt to compromise an institution's integrity." *Kroske*, 432 F.3d at 984 (internal citations and quotation marks omitted); *see also Westervelt v. Mohrenstecher*, 76 F. 118, 122 (8th Cir. 1896). The National Act's "at pleasure" provision has been repealed impliedly, however, to the extent necessary to effectuate 12 U.S.C. § 1831j(a)(1). *See Kroske*, 432 F.3d at 987.

¶28 The federal whistleblower protection provision, 12 U.S.C. § 1831j(a)(1), shields national bank employees from discrimination in retaliation for reporting possible bank misconduct to any federal banking agency or to the U.S. Attorney General. Congress enacted this provision as an amendment to the Federal Deposit Insurance Act, 12 U.S.C. § 1811 et seq., in 1989. Pub. L. No. 101-73, 103 Stat. 183, 494 (1989). Congress sought to "enhance the regulatory and enforcement powers of Federal financial institutions regulatory agencies . . . ." Pub. L. No. 101-73, 103 Stat. 183, 183 (1989). The WDEA's retaliatory discharge provision, § 39-2-904(1)(a), MCA, similarly exists to protect the State's interest in enforcing State policies "concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule." Section 39-2-903(7), MCA. The

federal statutes and the WDEA protect employees who take steps in their employment to promote the enforcement of laws and regulations.

¶29 The WDEA's retaliatory discharge provision comports with the federal whistleblower statute's purpose. *Tiede*, 748 N.W.2d at 754-55; *Booth*, 900 F.Supp. at 843; *Sargent*, 809 P.2d at 1302. The WDEA does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Barnett Bank*, 517 U.S. at 32, 116 S. Ct. at 1108; *see also Favel*, ¶ 40. No conflict exists between the policies underlying the Montana law and the federal statutes. The District Court's determination that the federal statutes and Montana's WDEA conflicted in light of the fact that the federal statute included more specific criteria is not determinative in the context of conflict preemption. The District Court improperly concluded that 12 U.S.C. § 24 (Fifth) and 12 U.S.C. § 1831j(1)(a), preempted Fenno's retaliatory discharge claim pursuant to § 39-2-904(1)(a), MCA, of the WDEA.

¶30 *Whether the District Court properly determined that Fenno qualified as a bank officer for purposes of the National Act's "at pleasure" provision.*

¶31 The National Act's "at pleasure" provision permits national banks to dismiss bank *officers* at their pleasure. 12 U.S.C. § 24 (Fifth). Fenno argues on appeal that Mountain West had stripped him of his officer status before it had terminated him. We need not reach Fenno's claim regarding his officer status in light of the fact that we have determined above that the District Court improperly applied 12 U.S.C. § 24 (Fifth) in this case. ¶ 29.

13

¶32    We reverse and remand.


/S/ BRIAN MORRIS


We Concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE




Justice John Warner dissents.

¶33    I dissent.  I would affirm the District Court's conclusion that federal law preempts Fenno's claim under the Montana WDEA.

¶34    The Court correctly states the law on preemption.  As the decision accurately notes, state law is preempted when either of the following is true: (1) one cannot comply with both the state and federal law or (2) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  ¶ 11 (quoting *Favel*, ¶ 40).

¶35    The Court incorrectly applies the law at ¶¶ 28-29 when it concludes that there is not an irreconcilable conflict between the state and federal laws because they both serve the same purposes.  In this case, the WDEA is preempted by federal law under both criteria stated above.

¶36    The Court erroneously concludes that the purposes underlying the state and federal laws are the same and that the WDEA does not impede the accomplishment of Congress' objectives.  The purpose of the "at pleasure" provision of 12 U.S.C. § 24 (Fifth) is to give banks "the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust." *Mackey*, 867 F.2d at 526. *See also Sargent*, 809 P.2d at 1302; *Kroske*, 432 F.3d at 984.  Section 1831j is the one and only exception under federal law to the "at pleasure" provision.  When enacting the bill that includes 12 U.S.C. § 1831j, Congress stated that its purpose was, among other things, "[t]o strengthen the enforcement powers of Federal regulators of depository institutions" and "[t]o strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors."  Pub. L. No. 101-73, 103 Stat. 187 (1989).  Both of these federal statutes are intended by Congress to protect the integrity of banking institutions and to provide enforcement mechanisms when necessary.

¶37    The purpose of the WDEA is focused not on protecting the integrity of the banking system, but on protecting employees, as the Court states at ¶ 28. The purpose of 12 U.S.C. § 24 (Fifth) and 12 U.S.C. § 1831j, as stated above, is not to protect employees, but banks.

¶38    12 U.S.C. § 1831j does offer some whistleblower protection to bank employees, but it is not a blanket protection.  The protection exists only if the employee reports the potential violation to the appropriate agency, because the congressional objective of greater enforcement is achieved only when a violation is reported outside the banking institution

15

involved, rather than reporting internally, as Fenno did in this case.

¶39   Today's decision, by limiting the power of banks under § 24 (Fifth) to fire employees at will unless the requirements of § 1831j are met, undermines the congressional purpose of the statute and "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Barnett Bank*, 517 U.S. at 32, 116 S. Ct. at 1108; *Favel*, ¶ 40.

¶40   Further, in this instance, federal law preempts the WDEA because there is an irreconcilable conflict between it and 12 U.S.C. § 24 (Fifth). *See Favel*, ¶ 40. Nowhere does Fenno assert that he reported the alleged violation to either a federal banking agency or the Attorney General, as required to secure protection from an at will termination under 12 U.S.C. § 1831j(a)(1). Therefore, 12 U.S.C. § 24 (Fifth) gave Mountain West the right to dismiss Fenno at its pleasure, and the Bank was fully in compliance with the federal statutes when it fired him. The Court's decision today puts Mountain West in the position of being in compliance with federal law while at the same time potentially violating Montana's WDEA. Thus, Mountain West may be found liable in a Montana court for exercising its statutory right under federal law to terminate Fenno's employment. In this situation, federal law preempts the WDEA.

¶41   Today's decision undermines federal law governing banks and interferes with the congressional purposes underlying 12 U.S.C. § 24 (Fifth) and 12 U.S.C. § 1831j. I would conclude that in this case the WDEA is preempted by federal law. I respectfully dissent.

/S/ JOHN WARNER

Chief Justice Karla M. Gray joins in the foregoing dissent.

/S/ KARLA M. GRAY